73 S.W.3d 505 (2002)
In the Matter of D.A.R., a juvenile, Appellant.
No. 08-01-00075-CV.
Court of Appeals of Texas, El Paso.
April 4, 2002.
*507 M. Clara Hernandez, El Paso County Public Defender, Penny Lee Andersen, Assistant Public Defender, Ruben Morales, El Paso, for Appellant.
Jose R. Rodriguez, County Attorney, Pierre T. Williams, Assistant County Attorney, El Paso, for Appellee.
Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

OPINION
LARSEN, Justice.
D.A.R., a juvenile, appeals his judgment of probation for delinquent conduct. He argues that the trial court erred in denying his motion to suppress statements because they were inadmissible as a result of noncompliance with Tex. Fam.Code Ann. § 51.095 and that he therefore was denied his due process rights. We reverse and remand.

Facts
D.A.R. was indicted for one count of delinquent conduct for carrying a firearm on school grounds. He was indicted for one count of delinquent conduct for possessing a firearm with an altered identification number. He initially pleaded not true to each count.
D.A.R. filed a pretrial motion to suppress, urging that at the time statements were made, he was under arrest and that he was deprived of the right to counsel and therefore did not intelligently, understandably, and knowingly waive his right to counsel. He argued that any resulting statements were involuntary, coerced, or enticed from him in violation of his constitutional and statutory rights. A hearing was held on the motion. Officer Jose A. Gonzalez, Jr., a school resource officer, *508 was the only witness presented at the hearing.
Officer Gonzalez testified that on November 17, 2000, he was notified by the assistant principal of Riverside Middle School that a student had said that D.A.R. had a weapon. D.A.R. was called to the assistant principal's office. Before D.A.R. entered the office, he was patted down. The assistant principal also went through D.A.R.'s backpack. No weapon was retrieved. D.A.R. was questioned but denied having any weapon.
D.A.R. was dismissed to return to class. Afterward, approximately fifteen students approached Officer Gonzalez and told him that D.A.R. was in possession of a gun and that they had been hearing that D.A.R. had brought a gun to school for his protection. One of the individuals told Officer Gonzalez that she had seen the gun before school. Although she did not know exactly where the gun was located, she took Officer Gonzalez to the area around a reservoir where the gun might be.
Officer Gonzalez summoned D.A.R. from class. A security guard brought D.A.R. to Officer Gonzalez's office. Officer Gonzalez again asked D.A.R. about the gun. He told D.A.R. that several students had told him that D.A.R. had a gun and that if D.A.R. had a gun it would be best for him to give it up.
During this second interrogation, a teacher signaled Officer Gonzalez and spoke privately with him. She told him that another student had information about the location of the gun. Officer Gonzalez testified at the hearing that if appellant had refused to speak to him, he would have spoken to the other student; however, he did not then speak to the student. Instead, he continued to speak to D.A.R. because of his need to secure the weapon as soon as possible. The other student was never questioned.
After the interruption, D.A.R. told Officer Gonzalez where the weapon was located and took him to it. The gun was discovered under a tire, approximately 150 feet from the school within the same area where the other student had taken Officer Gonzalez. The gun was not in plain view. D.A.R. was read his Miranda rights[1] and placed in custody.
The trial judge denied the motion to suppress based on the belief that the statements were admissible under Tex. Fam. Code Ann. § 51.095(a)(2).[2]
Thereafter, D.A.R. entered into an agreement to plead true to one count of delinquent conduct based on carrying a firearm in violation of Tex. Penal Code Ann. § 46.02, which was a modified version of the original first count. The second count of delinquent conduct was dropped. D.A.R. was adjudicated delinquent and received supervised probation until his eighteenth birthday for the offense.
D.A.R. brings one point on appeal of the judgment and seeks reversal and remand.

Right to appeal
A juvenile appellant is given the right to appeal under Tex. Fam.Code Ann. § 56.01(n), which states:
A child who enters a plea or agrees to a stipulation of evidence in a proceeding held under this title may not appeal an order of the juvenile court entered under *509 Section 54.03, 54.04, or 54.05 if the court makes a disposition in accordance with the agreement between the state and the child regarding the disposition of the case, unless:
(1) the court gives the child permission to appeal; or
(2) the appeal is based on a matter raised by written motion filed before the proceeding in which the child entered the plea or agreed to the stipulation of evidence.
Tex. Fam.Code Ann. § 56.01(n) (Vernon Supp.2002). Here, the trial court gave appellant implied permission to appeal his judgment. Moreover, appellant brings appeal based on the denial of his motion to suppress, which was filed pretrial, and it was only after appellant's motion to suppress was denied that his agreement with the State arose. Therefore, this appeal is appropriate.

Admissibility of statements
Under Tex. Fam.Code Ann. § 51.095, certain requirements must be met in order for a statement from a juvenile to be admissible at trial. Tex. Fam.Code Ann. § 51.095 (Vernon Supp.2002); see also In re Gault, 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527 (1967) (holding that the right against self-incrimination available to adults is also applicable in the juvenile context), cited in In re L.M., 993 S.W.2d 276, 287 (Tex.App.-Austin 1999, pet. denied). Here, appellant argues in his sole issue that the requirements of Section 51.095 were not met and that therefore his statements were inadmissible under Tex. Code Crim. Proc. Ann. art. 38.23. Specifically, appellant argues that he was in custody when the statements were made. As a result, he should have been informed of his rights before he was questioned. Appellant argues that even if he was not in custody when the confession was given, his statements were not made voluntarily. In response, the State argues that appellant was not in custody when the statements were made. The State further contends that the issue of voluntariness and coercion cannot be raised because appellant failed to preserve those claims in the lower court. If appellant was in custody when he was questioned by Officer Gonzalez, he was entitled to certain protections. Tex. Fam. Code Ann. § 51.095(d) (Vernon Supp.2002). Therefore, the question central to this appeal is if appellant was in custody. We discuss this first.

Standard of review
In a suppression hearing, the trial court is the sole finder of fact. Pace v. State, 986 S.W.2d 740, 744 (Tex.App.-El Paso 1999, pet. ref'd). The trial judge may believe or disbelieve any of the evidence presented. Id. at 744. The totality of circumstances is considered in determining whether the trial court's findings are supported by the record and, absent a clear abuse of discretion, the reviewing court does not disturb those findings. Brewer v. State, 932 S.W.2d 161, 166 (Tex.App.-El Paso 1996, no pet.). If there are no findings of fact, the reviewing court presumes the trial court found the facts necessary to support its ruling, so long as those findings are supported by the record. State v. Fecci, 9 S.W.3d 212, 219 (Tex.App.-San Antonio 1999, no pet.). Therefore, the evidence adduced at the suppression hearing is reviewed in the light most favorable to the trial court's ruling. Brewer, 932 S.W.2d at 166.
In contrast, mixed questions of law and fact not turning on credibility and demeanor are subject to de novo review. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). Because the issue of custody does not turn on the credibility or demeanor of witnesses, the determination *510 of whether an appellant was in custody at the time he gave statements is one such mixed question reviewed de novo. Jeffley v. State, 38 S.W.3d 847, 853 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

Was appellant in custody?
The Court of Criminal Appeals, citing Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293, 298-99 (1994), stated that a person is in custody if "under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." Dowthitt v. State, 931 S.W.2d 244, 254 (Tex.Crim.App.1996).[3] This is the standard of review that appellant relies on.
The State refers to the standard utilized in In re M.R.R., Jr., 2 S.W.3d 319 (Tex. App.San Antonio 1999, no pet.), to determine whether appellant was in custody at the time the statements were made. That standard employs a two-step analysis, set forth by Stansbury and another U.S. Supreme Court case, Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). The first prong examines the circumstances surrounding the interrogation in deciding whether there was a formal arrest or restraint to the degree associated with a formal arrest. In re M.R.R., Jr., 2 S.W.3d at 323. Under the second prong, the court considers whether a reasonable person would have felt he or she was at liberty to terminate the interrogation and leave. Id.
Arguably, both standards allow for a consideration of the totality of circumstances and, we believe, implicit within that, the age of the juvenile. However, neither standard allows for an explicit consideration of the age of the juvenile. The standard that allows for such a consideration was set forth by the Austin Court of Appeals in In re L.M. See also Jeffley, 38 S.W.3d at 855 (adopting the standard of In re L.M.); In re E.M.R., 55 S.W.3d 712, 722-24 (Tex.App.-Corpus Christi 2001, no pet.) (Yanez, J., dissenting). The Austin court, in discussing the standard to be applied with respect to determining whether a juvenile is in custody, cited caselaw from other states that adopted the age of the juvenile as a specific consideration. The court then concluded that it is appropriate for Texas courts to also consider the age of the juvenile. In re L.M., 993 S.W.2d at 288-89. It then adopted the following inquiry: "whether, based upon the objective circumstances, a reasonable child of the same age would believe her freedom of movement was significantly restricted." Id. at 289. The court was quick to note that although it incorporated an explicit consideration of age in its standard, its holding did not conflict with earlier Texas cases. Id. And, we note that the standard is similar to the Stansbury standard but includes an explicit consideration of the age of the juvenile.[4]
We too believe that a consideration of the age of the juvenile is appropriate. *511 Furthermore, we believe that such a consideration is consistent with the stated purpose of the Juvenile Justice Code, which is, in part, to assure that juveniles receive a fair hearing and that their rights are recognized and enforced, Tex. Fam. Code Ann. § 51.01(6) (Vernon 1996).
We believe the facts here establish that a reasonable thirteen-year-old would have believed he was in custody. We are aided in our inquiry by Dowthitt, which gave several factors that might be considered in determining whether an individual was in custody. Among them, the court may consider whether there was probable cause to arrest at the time of questioning; the subjective intent of the police; the focus of the investigation; and the subjective belief of the juvenile. 931 S.W.2d at 254; see also In re V.P., 55 S.W.3d 25, 31 (Tex.App.-Austin 2001, pet. denied) (applying the Dowthitt factors to a situation involving a juvenile). But, the subjective elements are only relevant to the extent that they are manifested in words or actions, Dowthitt, 931 S.W.2d at 254, as the test for custody relies solely on objective circumstances, id. Even a determination of probable cause is based on such an expression. Id. at 255.
First, there was probable cause to arrest appellant. Officer Gonzalez testified that at least fifteen students had told him appellant had a gun. He felt that the statements could not be mere coincidence. At the very least, Officer Gonzalez had probable cause to arrest appellant after appellant admitted that he had a gun and had left it close to the school grounds. Tex. Fam.Code Ann. § 52.01(a)(3) (Vernon 1996); Lanes v. State, 767 S.W.2d 789, 800 (Tex.Crim.App. 1989); Vasquez v. State, 739 S.W.2d 37, 44 (Tex.Crim.App.1987) (holding that an officer may make a warrantless arrest if he has knowledge based upon reasonably trustworthy information that would warrant a reasonable and prudent person in believing that the person has committed or is committing a crime). At this point, Officer Gonzalez testified, appellant was no longer free to leave because he was under investigation.
A reasonable thirteen-year-old child in appellant's position, moreover, would have become aware of Officer Gonzalez's probable cause to arrest him. Appellant had been called to the assistant principal's office for the first interview, where the assistant principal, security officer, and Officer Gonzalez were present. Appellant had been released from the initial interview, but then the uniformed security guard escorted appellant from class to Officer Gonzalez's office for a second interview, during which only Officer Gonzalez and appellant were present. The door was closed, leaving appellant alone with an armed, uniformed police officer who confronted him with allegations by numerous students that appellant had a gun. During the initial interview, appellant was told that it was rumored he had brought a gun, but during the second interview, Officer Gonzalez told him that fifteen students had told him appellant had a gun. Officer Gonzalez pressed appellant to tell him where the gun was, telling appellant that it was too much of a coincidence that all of the students had told him appellant had a gun and that it would be best for appellant to confess. And certainly, after appellant made his confession, he would have realized Officer Gonzalez's probable cause to arrest him, given that the incriminating nature of his statement would substantiate Officer Gonzalez's probable cause. See Dowthitt, 931 S.W.2d at 255.
Officer Gonzalez testified that he did not question the student the teacher had told him about because he was worried about that child's safety. Specifically, he was *512 concerned about any retaliation that might come as a result of the child acting as an informant. The second student would have been needed if appellant had been uncooperative and the student had helped locate the gun instead. Thus, appellant was the focus of the investigation, and the evidence suggests that the investigation was more than merely an attempt to secure the safety of the students; the evidence suggests that the investigation became criminal in nature and that not only was Officer Gonzalez attempting to secure the safety of the students, but he was also looking to the future criminal proceedings against appellant.
Officer Gonzalez also testified that he did not consider appellant to be in custody during either the first or second inquiries and testified that appellant was not Mirandized before the weapon was found because appellant was not then under arrest. During the second inquiry, in which only he and appellant were present, Officer Gonzalez believed that appellant was free to leave. Appellant was not handcuffed and the door was not locked.
But, neither was appellant told that he could leave. The door, although unlocked, was closed. Officer Gonzalez testified if appellant had been uncooperative, he would not have been allowed to leave; rather, appellant would have been required to stay in Officer Gonzalez's office while the other student was questioned.
Appellant was first questioned in the assistant principal's office by the assistant principal. During the second inquiry, appellant was taken to the police officer's office by a uniformed security guard. Appellant was unaccompanied when he was questioned, and he was not told that he could leave or call an adult to join him. We believe the facts were such that appellant would have believed his freedom of movement was significantly restricted. Cf. In re V.P., 55 S.W.3d at 33 (holding a juvenile not in custody where the juvenile, who brought a gun to school, was questioned in the assistant principal's office, because the juvenile was not questioned by the police officer and the officer was not present during the inquiry and as a result the juvenile was not the subject of a criminal investigation).
It was not until appellant was confronted with the statements the other students had made that he confessed to Officer Gonzalez that he had a gun and that he had left it close to the school grounds. Officer Gonzalez testified: "I told him I had information that he had the gun and it was too much of a coincidence that 15 students were telling me about his gun." Officer Gonzalez told appellant that "it would be best for [appellant]" if appellant told him about the gun. Even if appellant was not initially under arrest when he was called into Officer Gonzalez's office, the interrogation escalated into an arrest. See Jeffley, 38 S.W.3d at 857 (holding that when a suspect that was not previously in custody was pressed by the questioning officer for a truthful statement the situation escalated into a custodial interrogation and the appellant could have concluded that her freedom was inhibited significantly as to the extent of a formal arrest); Dowthitt, 931 S.W.2d at 255 ("[T]he mere fact that an interrogation begins as noncustodial does not prevent custody from arising later; police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation.").
In light of the circumstances, we believe that appellant was in custody when his statements were made. Although the events here occurred in quick succession, there was sufficient time for Officer Gonzalez to realize that appellant came into custody and should have been given proper warnings. Yet, Officer Gonzalez issued no *513 warnings to appellant and instead asked appellant to take him to the gun.
Appellant's statements were oral. Therefore, the admissibility of appellant's statements is guided by Tex. Fam.Code Ann. § 51.095(a)(5). Among its several requirements, a statement is only admissible if the child is given warnings by a magistrate before the statement is made and the child knowingly, intelligently, and voluntarily waives each right stated in the warning. Tex. Fam.Code Ann. § 51.095(a)(5)(A) (Vernon Supp.2002). The appropriate warnings were not administered to appellant here. Accordingly, we believe the trial court ruled incorrectly in concluding that appellant's statements were admissible under Section 51.095(a)(2).

Harm
We consider next whether the trial court's error was harmful under Tex. R.App. P. 44.2, which governs error in criminal cases. Error may be constitutional in nature, and the reviewing court must reverse the judgment of the lower court unless it determines beyond a reasonable doubt that the error was harmless. Tex.R.App. P. 44.2(a). If the error is nonconstitutional, it must be disregarded unless it affects substantial rights. Tex. R.App. P. 44.2(b); Johnson v. State, 43 S.W.3d 1, 4 (Tex.Crim.App.2001). The improper admission of a statement in response to custodial interrogation implicates the constitutional right against self-incrimination. See Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 1979 & Supp.2002); In re L.M., 993 S.W.2d at 287 (relying on In re Gault in applying the constitutional right against self-incrimination to children). We therefore employ the harm analysis mandated by Tex.R.App. P. 44.2(a).
This Court stated in Villalobos v. State, 999 S.W.2d 132 (Tex.App.-El Paso 1999, no pet.), "Essentially, where constitutional error is shown, the burden is on the State to come forward with reasons why the error is harmless." Id. at 136. We will reverse unless the record establishes beyond a reasonable doubt that the admission did not contribute to the conviction.
In the present case, we cannot find beyond a reasonable doubt that the trial court's denial of the motion to suppress did not affect appellant's decision to plead guilty and the resulting conviction. The error arose from appellant's interrogation while in custody, which violated his rights under the Juvenile Justice Code and his constitutional rights against self-incrimination. Likely, any juror would have placed great weight on the statements that appellant made. And the probable implication of the error was appellant's decision to plead guilty, subsequent to the denial of his motion to suppress. Thus, we conclude that error was harmful.
Because we find that the appellant was not properly warned in accordance with Section 51.095, we need not discuss the voluntariness of appellant's statement.
We sustain appellant's point.

Conclusion
We reverse the judgment of the trial court and remand for further proceedings.
McCLURE, J., dissenting.
McCLURE, Justice, dissenting.
The majority concludes that D.A.R. was in custody at the time he made his statements regarding possession of the gun and its whereabouts and that the statements are inadmissible because the State failed to establish compliance with Section 51.095(a)(5). In reaching this decision, the majority misapplies the objective test mandated by Dowthitt and Stansbury v. California. Under an objective standard, *514 D.A.R. was not in custody at the time he made the statements and compliance with Section 51.095(a)(5) was not triggered. Because I believe the statements are admissible under Section 51.095(a)(2), I respectfully dissent.

General Law Governing Custody Determination
The Supreme Court held in Miranda v. Arizona that a person questioned by law enforcement officers after being taken into custody or otherwise deprived of his freedom of action in any significant way must first receive certain warnings, known commonly as the Miranda warnings. Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial. Stansbury, 511 U.S. at 322, 114 S.Ct. at 1528; see Tex.Code Crim.Proc.Ann. art. 38.22 (Vernon 1979 and Vernon Supp.2002). The Miranda requirements apply only to a statement stemming from custodial interrogation. Thompson v. Keohane, 516 U.S. 99, 102, 116 S.Ct. 457, 460, 133 L.Ed.2d 383 (1995); see Tex.Code Crim.Proc.Ann. art. 38.22, § 5 (Vernon 1979).
Custodial interrogation is questioning initiated by a law enforcement officer after a person has been taken into custody or otherwise deprived of his freedom in any significant way. Thompson, 516 U.S. at 107, 116 S.Ct. at 463; Cannon v. State, 691 S.W.2d 664, 671 (Tex.Crim.App.1985), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). A reviewing court employs an objective standard in making the custody determination. A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. Dowthitt v. State, 931 S.W.2d 244, 254 (Tex.Crim.App.1996), citing Stansbury v. California, 511 U.S. 318, 322-24, 114 S.Ct. 1526, 1528-30, 128 L.Ed.2d 293, 298-99 (1994). The "reasonable person" standard presupposes an innocent person. Dowthitt, 931 S.W.2d at 254. Traditionally, courts have considered four factors in making the custody determination: (1) whether probable cause to arrest existed at the time of questioning; (2) subjective intent of the police; (3) focus of the investigation; and (4) subjective belief of the defendant. Dowthitt, 931 S.W.2d at 254. Both Stansbury and Dowthitt clarify that the determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. Stansbury, 511 U.S. at 323, 114 S.Ct. at 1529. Thus, the subjective intent of both the police and the defendant are irrelevant except to the extent that they may be manifested in the words or actions of the investigating officers. Dowthitt, 931 S.W.2d at 254.
The following situations generally constitute custody:
(1) when the suspect is physically deprived of his freedom of action in any significant way;
(2) when a law enforcement officer tells the suspect he cannot leave;
(3) when a law enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and
(4) when there is probable cause to arrest and a law enforcement officer does not tell the suspect that he is free to leave.
Dowthitt, 931 S.W.2d at 255.
In the first three situations, the restriction upon freedom of movement must *515 amount to a degree associated with an arrest and not merely an investigative detention. Id. In the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect. Id. Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. Id. Custody is established under the fourth situation if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. Id.

Custody in the Context of Juvenile Law
The admissibility of a juvenile's oral and written statements is governed by Section 51.095 of the Texas Family Code. If a child is found to be in custody, the requirements of Sections 51.095(a)(1) or 51.095(a)(5) apply. See Tex.Fam.Code Ann. § 51.095(d)(2) (Vernon Supp.2002). Consistent with Article 38.22, however, the requirements of Section 51.095(a) do not preclude the admission of a statement made by a child if the statement does not stem from custodial interrogation. Tex. Fam.Code Ann. § 51.095(b) (Vernon Supp. 2002). Two intermediate appellate courts have recently modified the test when considering whether a juvenile is in custody so that consideration is given to the age of the juvenile. See Jeffley v. State, 38 S.W.3d 847, 855 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd); In re V.P., 55 S.W.3d 25, 31 (Tex.App.-Austin 2001, pet. denied); In re L.M., 993 S.W.2d 276, 289 (Tex.App.-Austin 1999, pet. denied). The inquiry, as modified, is whether, based upon the objective circumstances, a reasonable child of the same age would believe his or her freedom of movement was significantly restricted. Jeffley, 38 S.W.3d at 855; In re L.M., 993 S.W.2d at 289. In both of these cases, the courts adhered to the view that this is an objective test. See Jeffley, 38 S.W.3d at 855 (stating that under the modified standard, the determination of custody is based entirely upon objective circumstances); In re L.M., 993 S.W.2d at 289 (stating that its holding does not conflict with the standard applied in earlier cases but expressly provides for consideration of age under the reasonable-person standard established in Stansbury). Like the majority, I believe the age of the juvenile is an appropriate consideration when examining the custody issue but it must be reiterated that the test remains an objective one.

Application of the Law to the Facts
Applying a de novo standard of review, I turn now to an examination of the facts in light of the four situations described in Dowthitt. With respect to the first, there is no evidence that Gonzalez physically deprived D.A.R. of his freedom in any significant way. There is no evidence that the security guard who retrieved D.A.R. from class placed her hands on the juvenile. Gonzalez did not handcuff D.A.R., place his hands on him, or otherwise physically restrict his freedom of movement. While Gonzalez closed the door to his office, he did not lock it. Once D.A.R. admitted that he had been in possession of the gun, Gonzalez still did not handcuff him or take him into physical custody. These facts certainly show the kind of restriction of movement involved in an investigative detention, but not an arrest. It is even more apparent that the second situation is not applicable here since Gonzalez never advised D.A.R. that he could not leave.
Under the third scenario, a reviewing court must analyze whether a law enforcement officer has created a situation that would lead a reasonable juvenile to believe that his freedom of movement has been *516 significantly restricted to the degree associated with an arrest as opposed to an investigative detention. D.A.R. had been summoned to the assistant principal's office earlier that morning, patted down, and questioned about the gun by the assistant principal in the presence of Officer Gonzalez. D.A.R. denied the allegations and was released to return to class. A short time later, he was again summoned to the school offices, this time by Officer Gonzalez. Gonzalez closed the door to his office, but did not lock it, and began to question D.A.R. about the other students' allegations that he had brought a gun to school. In considering these circumstances, I am aware there a juvenile would likely perceive a difference between being questioned by the assistant principal and by the on-campus police officer. However, even station house questioning does not, in and of itself, constitute custody. Dowthitt, 931 S.W.2d at 255; Jeffley, 38 S.W.3d at 855. Given the totality of the circumstances, including the fact that D.A.R. had been released earlier to return to class, a reasonable juvenile would have understood he was being temporarily detained for questioning about the gun but would not have believed his freedom of movement had been restricted to the degree associated with an arrest. See Jeffley, 38 S.W.3d at 855 (juvenile not in custody where she went to police station at request of police and there were no threats, express or implied, that she would be forcibly taken); see also Stone v. State, 583 S.W.2d 410, 413 (Tex.Crim.App.1979) (interrogation was non-custodial where suspect, after being questioned twice and released, went to the police station; was given a polygraph test which he failed; was told he would probably be charged; was not placed under arrest or told he could not leave; and made a statement).
Although the majority does not explicitly so state, it appears to hold that custody is established under the fourth situation because probable cause existed to arrest D.A.R. and Gonzalez did not tell him he was free to leave. I agree with the majority that probable cause existed to arrest D.A.R. once he admitted to possessing the weapon. Probable cause also existed based upon the totality of the circumstances, including the statement of the student who told Officer Gonzalez that she had seen D.A.R. with the gun that morning before school. I further agree that Gonzalez did not tell D.A.R. he was free to leave. But the majority does not complete the analysis by addressing whether Gonzalez manifested this knowledge of probable cause to D.A.R. or whether a reasonable juvenile would have believed that probable cause existed.
Before D.A.R. admitted he had brought a gun to school, Gonzalez never told him that there was probable cause to arrest him based upon the statement of the girl who had actually seen the gun. In fact, Gonzalez was careful not to relate this information to D.A.R. because Gonzalez wanted to protect the identity of the informant. While Gonzalez told D.A.R. it could not be a coincidence that so many students were saying that he had a gun, it is unlikely that a reasonable juvenile would believe he had been taken into custody based upon what amounted to school gossip, particularly since D.A.R. had been released earlier despite being questioned about the gun. Based upon these facts, I would find that knowledge of probable cause had not been manifested to D.A.R., and therefore, D.A.R. was not in custody at the time he made his admission to Officer Gonzalez. See Stone, 583 S.W.2d at 413. Consequently, the State was not required to demonstrate compliance with Section 51.095(a)(5) in order for this statement to be admissible.
*517 Turning to an examination of the facts surrounding the second statement, once D.A.R. admitted possession of the gun, probable cause clearly existed. A reasonable juvenile may have concluded that he could be taken into custody at that point. The facts show, however, that Officer Gonzalez did not handcuff D.A.R. or otherwise indicate that the circumstances had changed. Instead, he simply asked D.A.R. to take him to the weapon. I would find that even with the existence of probable cause, the circumstances would not lead a reasonable juvenile to believe that he was under restraint to the degree associated with an arrest. Consequently, D.A.R. was not in custody at the time he made the second statement.

Section 51.095(a)(2) and Voluntariness
The juvenile court determined that D.A.R.'s statements were admissible under Section 51.095(a)(2) which provides that a statement of a child is admissible in evidence if:
[T]he statement is made orally and the child makes a statement of facts or circumstances that are found to be true and tend to establish the child's guilt, such as the finding of secreted or stolen property, or the instrument with which the child states the offense was committed.
Tex.Fam.Code Ann. § 51.095(a)(2) (Vernon Supp.2002).
This provision, which is substantially similar to Article 38.22, Section 3(c),[1] allows the admission of certain oral statements made by a juvenile while not in custody.[2] Even in the absence of custody, due process may be violated by statements that are not voluntarily given. Wolfe v. State, 917 S.W.2d 270, 282 (Tex.Crim.App. 1996); In re V.M.D., 974 S.W.2d 332, 346 (Tex.App.-San Antonio 1998, no pet.). Therefore, if a juvenile raises an allegation of involuntariness with respect to a non-custodial oral statement that the State seeks to admit pursuant to Section 51.095(a)(2), he is entitled to a hearing outside the presence of the jury to determine the statement's admissibility.[3] At the hearing, the State has the burden to *518 prove by a preponderance of the evidence that the statement was given voluntarily. See Alvarado v. State, 912 S.W.2d 199, 211 (Tex.Crim.App.1995). Further, the trial court is the sole judge of the weight and credibility of the evidence, and the trial court's finding may not be disturbed on appeal absent a clear abuse of discretion. Alvarado, 912 S.W.2d at 211.
A statement is "involuntary," for purposes of federal due process, only in the presence of official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker. Alvarado, 912 S.W.2d at 211. Due process is violated only by confessions that are not in fact freely given rather than by mere noncompliance with prophylactic rules.[4]See Wolfe, 917 S.W.2d at 282. Absent coercive police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. Id. In judging whether a juvenile confession is voluntary, the trial court must look to the totality of circumstances. Darden v. State, 629 S.W.2d 46, 51 (Tex.Crim.App. 1982); In re V.M.D., 974 S.W.2d at 346.
As evidence of coercion, D.A.R. points to the evidence that he was removed from class and questioned by a uniformed and armed police officer without being given his Miranda warnings. The requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are not applicable to statements resulting from non-custodial interrogation. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). Therefore, the absence of those warnings does not demonstrate the type of coercion that would establish a due process violation. See Wolfe, 917 S.W.2d at 282. Likewise, an interview of one suspected of a crime by a police officer will always have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. See Mathiason, 429 U.S. at 495, 97 S.Ct. at 714. Being questioned by a police officer about a crime does not constitute the kind of coerciveness which will establish a due process violation even where the suspect is a juvenile. In the absence of any evidence of coercion, I would find that the trial court properly determined the statement is admissible pursuant to Section 51.095(a)(2). With these comments, I dissent.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).
[2] Under Section 51.095(a)(2), the statement of a child is admissible in evidence if the statement is made orally and the child makes a statement of facts or circumstances that are determined to be true and tend to establish his guilt. Tex. Fam.Code Ann. § 51.095(a)(2) (Vernon Supp.2002).
[3] We rely on criminal cases in this analysis because, as we noted in In re R.S.C., 940 S.W.2d 750 (Tex.App.-El Paso 1997, no pet.), "[a]lthough juvenile delinquency proceedings are considered civil proceedings, they are quasi-criminal in nature. The juvenile is guaranteed the constitutional rights an adult would have in a criminal proceeding because the juvenile delinquency proceedings seek to deprive the juvenile of his liberty." Id. at 751 (citations omitted).
[4] See also In re S.A.R., 931 S.W.2d 585 (Tex. App.San Antonio 1996, pet. denied), and In re V.M.D., 974 S.W.2d 332 (Tex.App.-San Antonio 1998, no pet.), which In re L.M. cites as using the reasonable person standard of Stansbury while impliedly considering the age of the defendant in reviewing the circumstances in each case. 993 S.W.2d at 288.
[1] Article 38.22, Section 3(c) provides: Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed. Tex.Code Crim.Proc.Ann. art. 38.22, § 3(c) (Vernon Supp.2002).
[2] The statute may also apply to custodial statements. See e.g., Robertson v. State, 871 S.W.2d 701, 713-14 (Tex.Crim.App.1993); Braddock v. State, 5 S.W.3d 748, 753-54 (Tex. App.Texarkana 1999, no pet.); Taylor v. State, 874 S.W.2d 362, 365 (Tex.App.-Fort Worth 1994, no pet.). In such a case, voluntariness is established by showing compliance with Miranda.
[3] Once the voluntariness issue is raised, the due process guarantee requires the trial court to hold a hearing on the admissibility of the statement outside the presence of the jury. Jackson v. Denno, 378 U.S. 368, 380, 84 S.Ct. 1774, 1782-83, 12 L.Ed.2d 908 (1964). Article 38.22, Section 6 and Texas Rule of Evidence 104(c) contain the same requirement. Tex.Code Crim.Proc.Ann. art. 38.22, § 6 (Vernon 1979); Tex.R.Evid. 104(c) ("In a criminal case, a hearing on the admissibility of a confession shall be conducted out of the hearing of the jury. All other civil or criminal hearings on preliminary matters shall be conducted out of the hearing of the jury when the interests of justice so require or in a criminal case when an accused is a witness and so requests."). Even though Section 51.095 does not expressly require a separate hearing, the due process clause, and therefore, Rule 104(c) requires it in a juvenile case where the issue is properly raised. Despite D.A.R.'s objection raised in his written motion to suppress, the trial court did not expressly rule on the voluntariness issue.
[4] Miranda applies only to statements made during custodial interrogation. Miranda, 384 U.S. at 444, 86 S.Ct. at 1612.