2) Caption, civil cases



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



VICTOR SALCEDO,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-01-00497-CR



Appeal from the


41st District Court


of El Paso County, Texas 


(TC# 990D04999)


MEMORANDUM OPINION


 Victor Salcedo appeals his conviction for two counts of aggravated sexual assault
of a child and one count of indecency with a child. A jury found him guilty and
sentenced him to ninety-nine years' imprisonment on the first count of aggravated sexual
assault of a child, ninety-nine years' imprisonment on the second count of aggravated
sexual assault of a child, and ten years' imprisonment on the indecency with a child
charge. We affirm counts one and three but reverse count two.

Facts

 After being sent to the principal's office on September 29, 1999 to discuss a
discipline problem, M______, just as she was leaving the office, asked to speak privately
with Ruben Acosta, the principal. She then told Acosta that her father had molested her
about a week earlier on September 21 when her mother had left her at his apartment. 
Victor Salcedo and M______'s mother are divorced. Acosta reported the incident to
Child Protective Services and M______'s mother, who worked in the school cafeteria. 
M______ was eight years old at the time.

 Detective Luis Rico of the Crimes Against Children Unit of the El Paso Police
Department was assigned to the case. On the morning of October 6, 1999, Detective Rico
met with investigator Letty Dolan Johnson of CPS. That morning he viewed a video of
an interview between Ms. Johnson and M______. He also spoke with M______'s mother
before and after the interview. He also met with and took a statement from Principal
Acosta. Based on this information, he completed a complaint affidavit and a warrant was
issued for Salcedo.

 That afternoon, Detective Rico, his partner Detective Ballou, and several patrol
officers proceeded to Salcedo's residence with the warrant. Salcedo was arrested at his
apartment and taken to the Crimes Against Children Unit. Detective Rico administered
the Miranda warnings to Salcedo, having him initial each right and signing the card at
4:45 p.m. Detectives Rico and Ballou then proceeded to take a confession which was
initialed and signed by Salcedo. The statement was completed at 6 p.m. Suppression of
this confession was denied at a pretrial hearing.


 At trial, after the State rested, counsel for the defense moved for acquittal on the
grounds that the State failed to establish a prima facie case against Salcedo. When that
was overruled, the defense indicated that he wished to put the documents from the sexual
assault examination into evidence as defense exhibit one. The judge indicated that they
would be admitted in front of the jury, but it does not appear that they were actually
admitted. The jury found Salcedo guilty of all three counts.

 No evidence of Salcedo's mental problems was admitted until the punishment
phase of trial. At punishment, the jury awarded the maximum period of imprisonment for
each charge against Salcedo: ninety-nine years on each of the two aggravated sexual
assault counts and ten years for indecency with a child.Admission of confession was proper

 Salcedo's first point of error claims that admitting his confession at trial violated
the due process clauses of the Fifth and Fourteenth Amendments, and Article 1, Section
19 of the Texas Constitution. Salcedo argues that the detectives taking his confession
knew that he had mental problems, then makes a logical leap to urge that Salcedo could
not have knowingly or intelligently waived his right to remain silent and have counsel
present prior to being interrogated.

i. standard of review

 The determination of whether a defendant was in custody at the time he gave
statements is a mixed question of law and fact. Since that decision does not depend upon
the credibility or demeanor of witnesses before the trial court, we review the custody
question de novo. In re D.A.R., 73 S.W.3d 505, 509-10 (Tex. App.--El Paso 2002, no
pet.); Jeffley v. State, 38 S.W.3d 847, 853 (Tex. App.--Houston [14th Dist.] 2001, pet.
ref'd). If a defendant was in custody by this analysis, the Court then proceeds to
determine whether the statement was involuntarily obtained through force or coercion. 
The standard of review regarding the voluntariness of a confession is a deferential review
of the trial court's determination of the historical facts and a de novo review of the law's
application to those facts. Henderson v. State, 962 S.W.2d 544, 564 (Tex. Crim. App.
1997) (applying same standard to a denial of a motion to suppress defendant's statement). 
As the determination of whether a confession is voluntary in most cases, as in this one,
will rely upon the factual determinations made by the trial judge after hearing and judging
the credibility of the testifying witnesses, the standard of review applied is abuse of
discretion. Franks v. State, 90 S.W.3d 771, 784 (Tex. App.--Fort Worth 2002, pet. ref'd,
untimely filed). The test for an abuse of discretion is not whether, in our view, the facts
present an appropriate case for the trial court's action. Instead, the court of appeals
determines whether the court acted without reference to any guiding rules and principles. 
Coots v. Leonard, 959 S.W.2d 299, 301 (Tex. App.--El Paso 1997, no pet.) (citing
Craddock v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124, 126 (1939)).

ii. custody

 The voluntariness of a statement is only an issue if the information was the result
of a custodial investigation. Rodriguez v. State, 939 S.W.2d 211, 215 (Tex. App.--Austin
1997, no pet.). The issue of whether or not Salcedo was in custody is settled. An arrest
warrant had already issued, and Salcedo clearly had been arrested and was not free to go
when his statement was taken.

iii. an overview of the analysis for whether a statement is voluntary

 Thus, our review must determine whether Salcedo's statement was given
voluntarily. Article 38.21 of the Code of Criminal Procedure provides that in order for a
statement to be used against a defendant it must be freely given:

 A statement of an accused may be used in evidence against him if it appears
that the same was freely and voluntarily made without compulsion or
persuasion, under the rules hereafter prescribed.


Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 1979). Since every defendant has a
constitutional right to remain silent, the law of Texas requires proper waiver of that right
under the provisions of article 38.22.

 Sec. 2. No written statement made by an accused as a result of custodial
interrogation is admissible as evidence against him in any criminal
proceeding unless it is shown on the face of the statement that:


. . .


 (b) the accused, prior to and during the making of the statement, knowingly,
intelligently, and voluntarily waived the rights set out in the warning
prescribed by Subsection (a) of this section.


Tex. Code Crim. Proc. Ann. art. 38.22, § 2(b) (Vernon 1979).

 A statement is involuntary if the record reflects "official, coercive conduct of such
a nature that any statement obtained thereby was unlikely to have been the product of an
essentially free and unconstrained choice by its maker." Alvarado v. State, 912 S.W.2d
199, 211 (Tex. Crim. App. 1995). Voluntariness of a confession is decided by
considering the totality of circumstances under which the statement was obtained. 
Creager v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997); Penry v. State, 903
S.W.2d 715, 744 (Tex. Crim. App. 1995). Mental deficiency is a factor in this
calculation. Penry, 903 S.W.2d at 744; Cornealius v. State, 870 S.W.2d 169, 175 (Tex.
App.--Houston [14th Dist.] 1994), aff'd, 900 S.W.2d 731 (Tex. Crim. App. 1995). 
However defendant's mental condition, by itself and apart from its relation to official
coercion, does not require a conclusion of involuntariness. Penry, 903 S.W.2d at 744;
Walker v. State, 842 S.W.2d 301, 303 (Tex. App.--Tyler 1992, no pet.) (citing Colorado
v. Connelly, 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986)). The
question to be resolved here is whether Salcedo's mental impairment was so severe that
he was incapable of understanding the meaning and effect of his statement. Casias v.
State, 452 S.W.2d 483, 488 (Tex. Crim. App. 1970); Reed v. State, 59 S.W.3d 278, 281-82 (Tex. App.--Fort Worth 2001, pet. ref'd); Harner v. State, 997 S.W.2d 695, 699 (Tex.
App.--Texarkana 1999, no pet.).

iv. valid waiver of right to remain silent

 An inquiry into the waiver of Miranda rights has two dimensions. Franks, 90
S.W.3d at 785. First, the waiver must be voluntary as a product of free and deliberate
choice rather than intimidation, coercion, or deception. Id. (citing Colorado v. Spring,
479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987); Ripkowski v. State, 61
S.W.3d 378, 384 (Tex. Crim. App. 2001)). Second, the waiver must be made with full
awareness both of the nature of the right being abandoned and the consequences of the
decision to abandon it. Id. (citing Spring, 479 U.S. at 573, 107 S.Ct. at 857; Ripkowski,
61 S.W.3d at 384). Salcedo's brief does not discuss why his mental impairment
prevented him from understanding the consequences of his waiver of rights and
confession. The confession states that Salcedo did knowingly, intelligently, and
voluntarily waive his rights and that he "want[ed] to give this statement so that [he] can
get help and tell [his] side of the [sic] what happened." Detective Ballou testified during
the suppression hearing that Salcedo was never offered help for his mental problems if he
signed the statement. Further, it appeared to Detective Ballou that Salcedo was articulate,
knew what was happening, and understood his rights. Detective Rico testified that even
with the statement as it was, that Salcedo appeared fine and was not suffering from any
delusions at the time he gave his statement.

 At the suppression hearing, Salcedo testified that he did express concerns to the
officer including that he was mentally incapacitated, that he was under the influence of
demons, and that he smoked marijuana. He also expressed that he was a sorcerer. All
this is included in the confession. Salcedo also testified that when he told Detective Rico
that he needed a doctor, Detective Rico said he would get him help right away if he would
tell them everything. Salcedo thought this meant he was going to be going to a mental
hospital instead of a jail. Detective Ballou's testimony contradicts that any such aid was
offered in exchange for the statement. There is no other evidence in the record of the
detectives coercing or otherwise abusing Salcedo's vulnerabilities to extract a confession. 
We find no error in the trial court's admission of the statement under these facts. The
first point of error is overruled.

Trial counsel was not clearly ineffective

 Salcedo's second point of error asserts that counsel's failure to voir dire the jury
panel on his mental problems, and failure to introduce evidence of his mental state during
guilt/innocence, rendered assistance of counsel ineffective in violation of the Sixth
Amendment of the U.S. Constitution. Salcedo argues that trial counsel failed to enter any
evidence that he suffered from mental illness during the guilt/innocence phase of the trial. 
This appears to be true. Although telling the trial judge that he had a number of
documents to enter into evidence when the jury returns to the courtroom, he failed to do
so. Review of the record does show that on Salcedo's closing argument, counsel did
discuss mental problems by referencing Lillith and Namath, Salcedo's other personalities,
alluded to in his confession.

 Texas courts adhere to the United States Supreme Court's two-pronged Strickland
test to determine whether counsel's representation was inadequate so as to violate a
defendant's Sixth Amendment right to counsel. Strickland v. Washington, 466 U.S. 668,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Hernandez v. State, 726 S.W.2d 53, 55 (Tex.
Crim. App. 1986). First, the defendant must show that his counsel's performance fell
below an objective standard of reasonableness. McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996), cert. denied, 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851
(1997). Second, assuming the defendant has demonstrated deficient assistance, it is
necessary to affirmatively prove prejudice. Id. In other words, appellant must show a
reasonable probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different. Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999). A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Id. (citing Hernandez, 726 S.W.2d at 55).

 The review of defense counsel's representation at trial is highly deferential. We
engage in "a strong presumption" that actions of counsel were within the wide range of
reasonably professional assistance. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App.
2000). The burden is on the appellant to overcome the presumption that, under the
circumstances, the challenged action might be considered sound trial strategy. Id.
Salcedo's brief on appeal fails to establish that trial counsel's performance fell below any
objective standard of reasonableness. Although it offers examples of what trial counsel
could have done differently, it does not show that what he did do was professionally
unreasonable or deficient. Perhaps, rather than introducing report upon report with 
information on Salcedo's life, defense counsel decided to let the arguably delusional
language of the confession speak for itself. This is certainly a valid strategy, and one that
would not violate the Strickland rule establishing counsel as ineffective. The second
point of error is overruled.

Evidence is legally insufficient to support

the verdict on the second count of the indictment


 Salcedo's third point of error challenges the legal and factual sufficiency of
evidence on the second count of the indictment. The second count of the indictment
alleged that Victor Salcedo intentionally and knowingly caused the sexual organ of
M_____, a child who was under the age of fourteen at the time, to contact the sexual
organ of Victor Salcedo. Central to this argument is a description of what happened by
M_____. She testified that Salcedo's penis "passed by" hers:

 A. . . . He had kneeled down and he pulled the side of my bathing suit
under, and he pulled it to the side, and he--when he bent down, his
penis just passed by mine and he started kissing me in my private
part. . . .


 Q. Okay. When you say his penis touched yours, what do you mean?


 A. It just passed by mine, real fast, when he was bending down.


 Q. Passed by your what?


 A. My private part.


Salcedo's confession does not mention any contact other than that Lillith, his other, evil
personality, wanted him to penetrate her, but he was "able to overcome that." His
confession also states that he pulled M_____ "up against my body really hard" because he
wanted her to feel his erect penis. (1) Salcedo claims that this is insufficient to support the
second count of aggravated sexual assault. We agree.

 In reviewing the legal sufficiency of evidence, this Court views the evidence in a
light most favorable to the verdict to determine whether any rational trier of fact could
find the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Geesa v. State,
820 S.W.2d 154, 159 (Tex. Crim. App. 1991); Rivera v. State, 885 S.W.2d 581, 583 (Tex.
App.--El Paso 1994, no pet.). Viewing evidence in a light most favorable to the verdict
means that the reviewing court is to review the evidence as it is already weighed by the
trier of fact's verdict, therefore deferring to the trier of fact's determinations of weight
and credibility. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The
Court of Appeals is not charged with determining whether the evidence establishes guilt
beyond a reasonable doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989),
cert. denied, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836
S.W.2d 700, 702 (Tex. App.--El Paso 1992, pet. ref'd). The fact finder, here the jury, is
the sole judge of the weight of the evidence and may choose to believe all, some, or none
of it. Moore v. State, 935 S.W.2d 124, 126 (Tex. Crim. App. 1996). We do not resolve
any conflict in fact, weigh any evidence, nor evaluate the credibility of any witnesses. 
Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Rivera, 885 S.W.2d at
583. Further, a reviewing court is not to disturb the trier of fact's decision unless it is
found to be irrational or unsupported by more than a "mere modicum" of the evidence. 
See Moreno, 755 S.W.2d at 867.

 The only witness present at the time of the incident other than Salcedo was the
victim. The medical reports from her sexual abuse examination were never entered into
evidence, despite discussion of entering them before the jury. Thus, the only evidence of
contact is her testimony that Salcedo's penis "passed by mine." Although the prosecutor
attempted to clarify her statement by using the word "touch" in his question, she simply
repeated the words "passed by." The testimony of a child victim alone is sufficient to
support a conviction for aggravated sexual assault. Jones v. State, 817 S.W.2d 854, 856
(Tex. App.--Houston [1st Dist.] 1991, no pet.); Villanueva v. State, 703 S.W.2d 244, 245
(Tex. App.--Corpus Christi 1985, no pet.). It is well established that a child victim is not
expected to testify with the same clarity and ability that is expected of adults. Villalon v.
State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990); Wallace v. State, 52 S.W.3d 231,
235-36 (Tex. App.--El Paso 2001, no pet.). Further, conflicts in evidence are for the jury
to resolve. Upton v. State, 853 S.W.2d 548, 552 (Tex. Crim. App. 1993).

 The lack of clarity of communication is often used in discussions of where a child
was touched or to explain the defendant's intent. See Wallace, 52 S.W.3d at 235-36. In
Wallace this Court explained that the rule with regard to a child's indication of location of
contact was that "courts view the critical inquiry as whether the child has sufficiently
communicated to the trier of fact that the touching occurred to a part of the body within
the definition of the controlling statute." Id. at 235 (citing Gottlich v. State, 822 S.W.2d
734, 741 (Tex. App.--Fort Worth 1992, pet. ref'd)). Wallace extended that rule to
application of determining the defendant's intent. Id. at 236. In this case, we use the
same principle to determine if actual contact took place as alleged in the indictment.

 Count II of the indictment alleges that Salcedo's sexual organ contacted
M_____'s. This is not proven and is absent from the confession. M_____ said that his
organ "passed by" hers. When the prosecutor asked her about how it "touched" hers, she
responded by using the same words "passed by" rather than using her offered word
"touched." We find this is not sufficient communication of the element of touch. The
prosecutor could have continued to elicit responses until M_____ said "touch" or
"contact" or that she "felt it" or offered any number of ways to explain that Salcedo had
contacted her as alleged in count II. She did not do this and failed to establish a critical
element to count II of the indictment.

 Because we find the evidence legally insufficient to support the verdict on the
second count of aggravated sexual assault of a child, we do not reach the challenge to
factual sufficiency. The third point of error is sustained and the judgment is reversed with
regard to the finding of guilt for the second count of the indictment.


Conclusion

 For the foregoing reasons, the judgment of the trial court is affirmed with regard to
counts I and III. We reverse and render a judgment of acquittal with regard to count II.


 SUSAN LARSEN, Justice

July 24, 2003


Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.


(Do Not Publish)

1. The State's brief agrees that Salcedo's statement alone does not provide sufficient
evidence of "organ-to-organ contact."