**Morris Wayne JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–270–CR.**

Court of Appeals of Texas, Waco.

Feb. 9, 2000.

James R. Jenkins, Waxahachie, for appellant.

Joe F. Grubbs, County and Dist. Atty., Waxahachie, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

1. The brief complains of error in denying his "motion for judgment not withstanding the verdict." This is a civil concept. Rule 301 of the Texas Rules of Civil Procedure allows the trial court to disregard a jury verdict and render judgment if a directed verdict would have been proper. Tex.R. Civ. P. 301. In the interest of justice, we will consider his issue as a complaint about the trial court's failure to grant his motion for a directed verdict.

## OPINION

TOM GRAY, Justice.

This is a circumstantial evidence case. A man was found guilty by a jury of the crime of theft. The only evidence to convict him consisted of his recent and unexplained possession and sale of the items taken. Because we determine that the circumstance of recent and unexplained possession of stolen items allows an inference of guilt, we hold that the evidence is legally and factually sufficient to support the verdict.

## FACTS

On the morning of March 17, 1997, Life Like Products, located in Waxahachie, determined that several aluminum molds had been taken from its facility over the weekend. The molds are made of aluminum but are large and heavy. The owner suspected they were stolen to be sold for their scrap metal value. The owner sent a fax to local recycling facilities of the description of the molds. The molds had in fact been purchased by various recycling facilities within two days from the day the items were reported stolen. The items were retrieved within a week of the theft.

## PROCEDURAL BACKGROUND

Morris Wayne Jackson was charged with theft of property valued between $20,000 and $100,000. Jackson pled not guilty. The jury convicted him. Jackson pled "true" to two prior convictions. The jury assessed punishment at 43 years in prison. Jackson made an oral motion for a directed verdict.[1] The trial court overruled his motion. Jackson then filed a motion for new trial which was also overruled.[2] He appeals the trial court's ruling

2. Jackson filed a motion for new trial alleging that the evidence is legally and factually insufficient to link him to the scene of the theft. While it is proper to raise an issue of legal or factual sufficiency in a motion for new trial, our review on appeal remains a legal and factual sufficiency review. *Gonzales v. State*, 689 S.W.2d 900, 901 (Tex.Crim.App.1985); *Jones v. State*, 951 S.W.2d 522, 527 (Tex. App.—Beaumont 1997, pet. ref'd). We do not review the denial of the motion for new trial.

on both motions. Both motions presented the complaint of whether there was legally sufficient evidence to support a guilty verdict.

The motion for new trial also complained that the evidence was factually insufficient to support the verdict. In particular, Jackson contends that it was error for the jury to conclude that he was the party responsible for the theft of the aluminum molds because there was no evidence linking him to the scene of the alleged theft. He argues that, because there is no such link, the evidence was both legally and factually insufficient to establish that he committed theft.

## CIRCUMSTANTIAL EVIDENCE IN THEFT CASES

■ With the consolidation of the theft offenses in 1985, the manner in which a defendant comes to possess property, whether by initially taking it from the owner or by subsequently receiving it from someone who did, is no longer an essential element of the crime. *Chavez v. State*, 843 S.W.2d 586, 588 (Tex.Crim.App.1992).

■ Even before the 1985 legislative revisions, possession of stolen property was considered an inculpatory circumstance which gave rise to a permissible inference of guilt. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex.Crim.App.1983). Evidence that an accused exercised control over property without consent of the owner, intending to deprive him of it, is sufficient to prove theft. *Chavez*, 843 S.W.2d at 588. Unexplained possession of recently stolen property also establishes the offense, because it has long been considered sufficient to prove the same elements. *Id.*

■ Because the receipt of stolen property is no longer an offense requiring proof of different statutory elements, it follows that proof of unexplained possession is also sufficient for conviction in cases where the accused in fact received the stolen property from someone other than the alleged owner. *Id.* If a defendant is found in possession of recently stolen property, the fact finder may draw an inference of guilt. *Id.*; *Hardesty*, 656 S.W.2d at 76.

■ To draw the inference of guilt from only the circumstance of possession of stolen property, the defendant must be shown to have been in possession thereof recently after the theft occurred. *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim.App.1984). Whether stolen property is "recently" possessed by the defendant is a question of fact and not of law. *Id.* Generally, the shorter the interval between the theft and the possession, the stronger the inference, although the cases will vary according to such factors as the ease with which such property can be transferred. *Hardage v. State*, 552 S.W.2d 837, 840 (Tex.Crim.App.1977). Additionally, when there is independent evidence of a burglary, the unexplained personal possession of recently stolen property will support an inference of guilt. *Hardesty*, 656 S.W.2d at 76. The application of such an inference does not violate the due process requirements of the federal constitution. *Barnes v. United States*, 412 U.S. 837, 846, 93 S.Ct. 2357, 2363, 37 L.Ed.2d 380 (1973).

■ If a defendant offers an explanation as to his possession of recently stolen property, the record must demonstrate that the defendant's explanation at the time his possession is called into question is either false or unreasonable before the evidence will support the conviction of theft. *Adams v. State*, 552 S.W.2d 812, 815 (Tex.Crim.App.1977); *Smith v. State*,

The proper issue on appeal is whether the evidence is legally or factually sufficient to support the verdict. Today, we do not express an opinion whether a defendant is required to preserve a legal or factual sufficiency complaint in a motion for new trial in order to present it on appeal. *See* Tex.R.App. P. 33.1; *see also Gonzales v. State*, 4 S.W.3d 406, 412 (Tex.App.—Waco 1999, no pet.) (Requirement for preservation of complaint of ineffective assistance of counsel.)

518 S.W.2d 823, 825 (Tex.Crim.App.1975); *Hood v. State,* 860 S.W.2d 931, 937 (Tex. App.—Texarkana 1993, no pet.). Whether the defendant's explanation is false or unreasonable is an issue to be decided by the trier of fact. The falsity of the explanation may be shown by circumstantial evidence. *Adams,* 552 S.W.2d at 815. If the defendant's explanation is reasonable and is sufficient to rebut the circumstances of his possession of recently stolen property, and other evidence, including the surrounding circumstances, is not sufficient to show the defendant's explanation is false, then possession alone is insufficient to sustain the conviction. *Huff v. State,* 492 S.W.2d 532, 533 (Tex.Crim.App.1973).

Because the direct evidence at trial does not directly link Jackson to the actual taking of the molds, it is necessary for us to determine whether the State established appellant's guilt through circumstantial evidence. *Sutherlin,* 682 S.W.2d at 548. The review is the same for circumstantial evidence as it is for direct evidence. *Fulgium v. State,* 4 S.W.3d 107, 109 (Tex. App.—Waco 1999); *see Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991); *Reeves v. State,* 969 S.W.2d 471, 478 (Tex. App.—Waco 1998, pet. ref'd).

## EVIDENCE AT TRIAL

According to Ike Knight, the operations manager of Life Like Products in Waxahachie, on March 17, 1997, his employees found that one of the storage facilities on the company grounds had been broken into and that several heavy, aluminum molds had been taken. Knight made a reward poster which he immediately faxed to all recycling facilities he could locate in the Dallas area. As a result of this fax, he received information from at least one of the local facilities which led to the recovery of some of the molds. He testified as to the value of the molds.

Knight testified about how the molds are used to manufacture Styrofoam items such as surf boards, computer packaging, and "tortilla warmers." The molds were heavy, weighing from 100 to 200 pounds, but were taken over an eight foot tall fence which had a barbed-wire top. He worked directly on the recovery of the molds with the manager of administration, William Bell, as well as with a Dallas police detective, a Waxahachie police detective, and several owners and employees of recycling facilities in Dallas.

Edward Padillo, a detective with the Dallas Police Department, testified that he routinely visits the recycling plants in the Dallas area in order to watch for stolen items. According to Padillo, when a person sells large amounts of metals to a recycling facility, the person is required by law to present a valid, government-issued, identification card. During routine investigations, Padillo discovered who had sold the molds because the recycling facilities routinely make photocopies of the seller's identification. Padillo then passed this information to Larry Ball of the Waxahachie Police Department.

Larry Ball, a lieutenant with the Waxahachie Police Department, conducted the initial investigation at the crime scene as well as the ongoing investigation of the information provided by the recycling facilities. Ball came to the Life Like Products warehouse on Monday, March 17, 1997. He testified that the wall, or fence, surrounding the facility was made of sheets of metal with barbed wire at the top. Ball testified that before the theft, the molds had been stacked in a holding facility and they had been visible from the road. According to his testimony, someone covered the barbed wire with a cloth, pried back the door to the holding facility, and somehow managed to toss the molds over the fence, leaving indentations in the ground where they landed. There was evidence that a vehicle approached the area, but no definitive tire tracks were available because the ground was hard and covered in grass. There were no identifiable footprints or fingerprints at the facility. Based upon the information gathered from various recycling facilities, along with the

information received from Padillo, Ball obtained an arrest warrant for Jackson.

Johnny Grinstein, the owner of Action Metals in Dallas, testified that, if a person attempts to sell more than $25 dollars worth of metal to a facility, the identity of the person is established by government-issued identification. His facility routinely asks for such identification and makes a photocopy before they will buy the recyclable material. Furthermore, sellers are required to supply their signature in order to make the sale and the signature is compared to the signature on the identification. Grinstein testified that his facility will not buy the material from the person if the identification does not appear to be the person making the sale. The records from Grinstein's company show that its purchase of the stolen molds took place on or around March 17, 1997. He testified that the photocopy and signature of the person making the sale appeared to be Jackson's.

Dana Fielder, the manager for Gold Metal Recyclers in Dallas, testified to the same procedure of identification and signature for the sale of large items. Her company records indicate a sale made by Jackson within two days of the sale to Action Metals.

Quaid Joher, an employee of Trinity Recycling, testified that, as an employee, he is instructed to never accept a sale of material if the identification used is not the same as the person attempting the sale. He then photocopies the identification before accepting the material. His records indicated a sale made by Jackson to Trinity Recycling on or within two days of March 17, 1997.

None of the witnesses could place Jackson at the facility in Waxahachie. None of them knew of any alleged relationship between Jackson and another man arrested for the sale of other molds taken from the Life Like Products facility, but sold at different locations. No one could say whether or not Jackson had ever been seen at the Waxahachie facility.

## SUFFICIENCY OF THE EVIDENCE

In order to find Jackson guilty of theft the jury was required to find that he acquired or exercised control over the aluminum molds, without consent of the owner but with an intent to deprive the owner of the molds permanently and that the molds had a value of over $20,000 and under $100,000. TEX. PEN.CODE ANN. § 31.03 (Vernon 1994 & Supp.1999). Based on the evidence as summarized above, the jury convicted Jackson.

### LEGAL SUFFICIENCY OF THE EVIDENCE

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weightman v. State*, 975 S.W.2d 621, 624 (Tex. Crim.App.1998); *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)); *Westfall v. State*, 970 S.W.2d 590, 595 (Tex.App.—Waco 1998, pet. ref'd). The evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 238–40 (Tex.Crim.App.1997).

### APPLICATION OF LAW TO FACTS

When viewing all the evidence in the light most favorable to the verdict, the jury could have found the essential elements of the crime beyond a reasonable doubt and rejected Jackson's strategy to create doubt of his guilt based upon the inability of anyone to place him in Waxahachie. The evidence was legally sufficient.

### FACTUAL SUFFICIENCY OF THE EVIDENCE

In conducting a factual sufficiency review, we examine all of the evidence impartially, discarding the prism of reviewing the evidence in the light most favorable to the verdict, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly

wrong and unjust. *Cain v. State,* 958 S.W.2d 404, 410 (Tex.Crim.App.1997); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996); *Hernandez v. State,* 938 S.W.2d 503, 512 (Tex.App.—Waco 1997, pet. ref'd). When performing our review, we give due deference to the fact finder's assessment of the weight and credibility of the evidence. *Calhoun v. State,* 951 S.W.2d 803, 810 (Tex.App.—Waco 1997, pet. ref'd).

■ We will find the evidence insufficient only where necessary to prevent manifest injustice. *Cain,* 958 S.W.2d at 407. While evidence may be in conflict, it is for the jury, as trier of fact, to resolve any conflicts and inconsistencies in the evidence. *Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App.1982). Even where there is no conflict, the jury may give no weight to some evidence, and thereby reject part or all of a witness' testimony. *See Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App.1987). The jury is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991).

*APPLICATION OF LAW TO FACTS*

■ The jury had before it sufficient evidence of Jackson's possession of recently stolen property to permit an inference of guilt. Jackson made no explanation of his possession at the time of his arrest. At trial, he asserted for the first time that no one could place him at the facility in Waxahachie at any time. We find the evidence factually sufficient to support the jury's verdict.

## CONCLUSION

We overrule Jackson's issues and find that the evidence is legally and factually sufficient for a rational trier of fact to find the elements of the crime of theft and reject the theory proposed at trial by Jackson. We affirm the judgment of the trial court.