**In the Matter of J.W., a Child, Appellant.**

No. 05–05–00675–CV.

Court of Appeals of Texas, Dallas.

June 12, 2006.

---

April E. Smith, Mesquite, for appellant.

William T. Hill, Dallas, for appellee.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice FRANCIS.

A jury found that J.W., a juvenile, was a child engaged in delinquent conduct by committing theft, and the trial court ordered him committed to the Texas Youth Commission. In four issues, J.W. complains the evidence is legally and factually insufficient to support the jury's finding that he committed theft; the trial court erred in admitting his oral statement; and the trial court abused its discretion in committing him to TYC. We affirm.

Jim Villwok was a teacher at Poteet High School in Mesquite. J.W., who was sixteen years old at the time of the incident, was a student in Villwok's last class of the day. On the afternoon of October 29, 2004, Villwok found J.W. in his office, which is accessed through the classroom. Villwok asked J.W. what he was doing, and J.W. "really didn't say anything" but acted "like he shouldn't have been in there."

That night, Villwok was at the high school football game and saw J.W. He noticed that J.W. had a gray case on his belt that looked similar to one that Villwok used for his digital camera. Villwok kept the camera in his office under the computer. Suspicious, Villwok went to his office to check on his camera and found that it was missing. Villwok returned to the game and notified Mesquite Police Officer Darryl Simmons and school administrators.

Officer Simmons located J.W. in the stadium and asked about the case hanging on his belt. J.W. told him it was a camera. Officer Simmons asked to see the camera, and J.W. handed it to him. Officer Simmons asked where J.W. got the camera, and J.W. said he got it during the game from a "guy named Mike." J.W. said he did not know Mike's last name but described him for Officer Simmons. Officer Simmons told J.W. that the camera may be stolen and that he was going to keep it until he could verify his story.

The next week, Officer Simmons matched the serial number of Villwok's missing camera to the camera taken from J.W. Also, Officer Simmons talked to Mike Sanders, who he had determined was the "Mike" identified by J.W. Sanders had no knowledge of the camera. At trial, Sanders testified that he had a conversation with J.W. after Halloween in which J.W. asked for his help. According to Sanders, J.W. said he got a camera from a "retarded boy" and wanted Sanders, if asked by the police, to say that Sanders got the camera from a "retarded boy."

J.W. gave at least two other versions of where he obtained the camera. Villwok testified that he asked J.W. about the camera when J.W. returned to school, and J.W. told him that another student gave it to him. Additionally, two witnesses, both friends of J.W., testified that they saw J.W. with the camera after school on October 29. Both testified that J.W. told them he got the camera from his mother. J.W. took pictures of his friends with the camera.

In issues one and two, appellant complains the evidence is legally and factually insufficient to support his adjudication for theft. Specifically, he argues that no one saw him take the camera from Villwok's office. J.W. argues these issues together.

■ In juvenile cases, we apply the standards used in criminal cases to determine the legal and factual sufficiency of the evidence. *In re A.B.,* 133 S.W.3d 869, 871 (Tex.App.-Dallas 2004, no pet.) (legal sufficiency); *In re Z.L.B.,* 115 S.W.3d 188, 190 (Tex.App.-Dallas 2003, no pet.) (factual sufficiency). In a legal sufficiency review, the relevant question is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re A.B.,* 133 S.W.3d at 871. In a factual sufficiency review, we determine whether a neutral review of all the evidence demonstrates the proof of guilt is so obviously weak as to undermine confidence in the jury's determination or, although adequate if taken alone, is greatly outweighed by contrary proof. *In re Z.L.B.,* 115 S.W.3d at 190.

■ A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PEN.CODE ANN. § 31.03(a) (Vernon Supp. 2005). Unexplained possession of recently stolen property establishes the offense of theft. *Jackson v. State,* 12 S.W.3d 836, 839 (Tex.App.-Waco 2000, pet. ref'd). If a defendant offers an explanation as to his possession of recently stolen property, the record must demonstrate that the defendant's explanation at the time his possession is called into question is either false or unreasonable before the evidence will support the conviction of theft. *Id.* Whether the defendant's explanation is false or un-

reasonable is an issue to be decided by the trier of fact. *Id.* The falsity of the explanation may be shown by circumstantial evidence. *Id.* However, if the defendant's explanation is reasonable and is sufficient to rebut the circumstances of his possession of recently stolen property, and other evidence, including the surrounding circumstances, is not sufficient to show the defendant's explanation is false, then possession alone is insufficient to sustain the conviction. *Id.*

Here, the evidence showed that less than an hour after Villwok caught J.W. in his office without his permission, J.W. had a digital camera and was taking pictures of friends. That night, J.W. had Villwok's camera at the football game, and it was confiscated by the police. J.W. offered four different versions to different people of how he came into possession of the camera: his mother gave it to him; he got it from a "guy named Mike"; a classmate gave it to him; and he got it from a "retarded boy." Although no person actually saw J.W. walk out of Villwok's office with the camera, we conclude a rational trier of fact could deduce from the above circumstances, beyond a reasonable doubt, that J.W. stole the camera. Accordingly, the evidence is legally and factually sufficient to support the jury's finding of theft. We overrule the first and second issues.

■ In his third issue, J.W. complains the trial court erred in admitting his oral statements to Officer Simmons at the football game. J.W. does not complain about any particular statement that he made but generally about the conversation he had with Officer Simmons. He argues the conversation was the result of "custodial interrogation," and its admission violated section 51.095 of the Texas Family Code. We disagree.

Under section 51.095, certain requirements must be met for a juvenile's statement to be admissible. *See* TEX. FAM.CODE ANN. § 51.095 (Vernon Supp.2005). The statute does not, however, preclude admission of a voluntary oral statement by a juvenile that does not stem from custodial interrogation. *See* TEX. FAM.CODE ANN. § 51.095(b)(1), (d)(2).

■ In determining whether a minor was in custody at the time of questioning, courts consider the age of the defendant and all the circumstances surrounding the interrogation to decide whether there was a formal arrest or a restraint of movement to the degree associated with formal arrest. *In re V.P.*, 55 S.W.3d 25, 31 (Tex. App.-Austin 2001, pet. denied). In other words, courts ask whether, based on the objective circumstances, a reasonable child of the same age would believe his or her freedom of movement was significantly restricted. *Id.* Factors relevant to the question of whether a child was in custody include whether there was probable cause to arrest, the focus of the investigation, the officer's subjective intent, and the child's subjective beliefs. *Id.*

The evidence showed that Villwok reported to Officer Simmons and school administrators that he believed J.W. had his digital camera. In response, Officer Simmons began looking for J.W. in the stands at the football game. When Officer Simmons spotted J.W., a second officer was near J.W., and Simmons asked the officer to bring J.W. to him. Both Simmons and the second officer were in full police uniform and had guns.

At the time of the questioning, J.W. was standing above Simmons on the walkway in the stands next to the second officer; Officer Simmons was standing below J.W. on the field with two school administrators. Although Officer Simmons testified that J.W. was not free to leave, he did not communicate that to J.W. Further, although he told J.W. he believed the camera might be stolen, he did not accuse J.W. of theft. Finally, because Officer Simmons had not determined whether the camera was stolen, he did not have probable cause to arrest J.W.

As for J.W., he was not arrested, handcuffed, or restrained in any way. He was not placed in a patrol car or taken to the police station for questioning. He never asked to go home or asked for his mother or an attorney. Rather, he answered Officer Simmons's questions and turned over the camera.

Considering all the circumstances objectively, we conclude a reasonable sixteen-year-old in J.W.'s circumstances would have felt able to end the questioning, particularly since the officers did nothing to restrain or restrict appellant's movement. Because we conclude appellant was not in custody during the questioning, the trial court did not err in admitting the challenged statements. Issue three is without merit.

■ In his fourth issue, J.W. contends the trial court abused its discretion in finding that he should be committed to TYC. A juvenile judge has broad discretion to determine the proper disposition of a child who has been adjudicated as engaging in delinquent behavior. *In re K.J.N.*, 103 S.W.3d 465, 465–66 (Tex.App.-San Antonio 2003, no pet.) We will not disturb the juvenile court's determination absent an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court acts unreasonably or arbitrarily and without reference to guiding rules and principles. *Id.* The guiding rules and principles in juvenile cases involving commitment outside the child's home are found in the Texas Family Code. *Id.*

The family code permits a trial judge to commit a child to TYC if (1) it is in the child's best interest to be placed outside the home; (2) reasonable efforts have been taken to prevent or eliminate the need for the child's removal from the home; and (3) while in the home, the child cannot receive the quality of care and level of support and supervision needed to meet the conditions of probation. TEX. FAM.CODE ANN. § 54.04(i) (Vernon Supp.2005).

Here, the trial court made the necessary statutory findings. Having reviewed the record, we conclude it supports those findings. Alicia Lawhorn, the court liaison officer for the Dallas County Juvenile Department, recommended that J.W. be committed to TYC. According to Lawhorn, J.W. needed a highly structured setting. He had been released from TYC only seven months prior to his arrest in this case and, before that, had been placed in a level five facility, CSC Medlock, where he had been unsuccessfully discharged. Lawhorn testified there are no other level five facilities with which Dallas County contracts, and she did not believe Medlock would take J.W. again, given information in his discharge summary.

Further, Lawhorn testified J.W. had a history of running away, associating with negative peers, getting expelled from school, using drugs, and associating with gangs. While being held in the detention facility awaiting trial, J.W. had been on restrictive activity plans for being defiant, argumentative, disruptive in class, and playful; talking without permission; not following instructions; using profanity; and once threatening a staff member.

We recognize that J.W.'s mother testified that since his release from TYC, he had made new friends and was no longer associating with "bad influences." She said his behavior had changed dramatically; he was going to church regularly and was working with children in Bible classes. However, the trial court was in the best position to resolve any issues with respect to J.W.'s sincerity and credibility, especially in light of J.W.'s behavior while in detention. Considering all the evidence before the trial court, we cannot conclude the trial court abused its discretion in committing J.W. to TYC. We resolve the fourth issue against him.

We affirm the trial court's judgment.