**Opinion issued June 17, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00712-CV

————————————

## IN THE MATTER OF J.J., Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-03598J**

---

## DISSENTING OPINION

In this appeal from the juvenile court's 20-year determinate sentence for the delinquent conduct of capital murder, the issue is whether the juvenile court erred in denying the 14-year-old juvenile's motion to suppress his confession. The juvenile (J.J.) argues that his confession is inadmissible because he made it during a custodial

interrogation without having first received the statutory warnings required by the Family Code. *See* TEX. FAM. CODE § 51.095 ("Admissibility of a Statement of a Child"). It is undisputed that J.J. did not receive the warnings before making his confession. Therefore, the sole issue is whether J.J. was in custody at the time he made his confession—or, more specifically, whether the objective circumstances of the questioning would have caused a reasonable 14-year-old to believe his freedom of movement was restrained to the degree associated with a formal arrest. *See Jeffley v. State*, 38 S.W.3d 847, 855 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (test for determining juvenile custody is "whether, based upon the objective circumstances, a reasonable child of the same age would believe [his] freedom of movement was significantly restricted").

The following facts are undisputed. J.J. made his confession during an interview with two Houston Police Department officers without a parent or guardian present. The interview took place when J.J. was 14 years old and in the eighth grade. One day while J.J. was at school, J.J.'s school resource officer (a uniformed law enforcement officer responsible for safety and crime prevention at J.J.'s middle school) retrieved J.J. from class and escorted J.J. to his office, where the two HPD police officers were waiting for him. The police officers informed J.J. that they wanted to interview him about some matter and that "if [J.J.] want[ed] to sit and talk to [them] that would be great." The officers further informed J.J. that at the end of

2

the interview he would "go back to class." They emphasized that there was "no warrant for [his] arrest" and that he was "not going to jail." However, the officers did not specifically inform J.J. that he had no obligation to speak with them. Nor did they inform J.J. that, if he agreed to speak with them, he could nevertheless terminate the interview and leave at any time. They likewise did not offer J.J. the opportunity to call a parent or guardian beforehand.

Based on these undisputed objective facts, I would hold that a reasonable child of the same age as J.J. would have believed his freedom of movement was restrained to the degree associated with a formal arrest and that the juvenile court therefore erred in ruling J.J.'s confession did not stem from a custodial interrogation. In my view, three factors, considered together, are dispositive: (1) the location of the questioning; (2) the manner in which J.J. arrived at the interview room; and (3) the officers' failure to expressly apprise J.J. of his right not to speak with them and his right to terminate the interview at any time. Because these dispositive factors do not turn on the credibility or demeanor of a witness, I would review the juvenile court's ruling de novo. *See id.* at 853 ("Because the issue of custody does not turn on the credibility or demeanor of witnesses in this case, we review *de novo* the trial court's legal determination that appellant was not in custody at the time she gave the statements."). I discuss each factor in turn.

3

**The location of the questioning.** J.J. was questioned at school on a school day during school hours. Thus, when questioned, J.J. was *already* in custody—the school's custody. *See Schall v. Martin*, 467 U.S. 253, 265 (1984) ("[J]uveniles, unlike adults, are always in some form of custody."); *see also In re L.M.*, 993 S.W.2d 276, 290 (Tex. App.—Austin 1999, pet. denied) ("While appellant was not 'incarcerated' in the children's facility, she was within the custody of the shelter and under its control, having been placed there by court order.").

Under Texas's compulsory education regime, subject to certain inapplicable exceptions, students ages 6–19 must attend school each day that instruction is provided. *See* TEX. EDUC. CODE §§ 25.085–.087, .095. Though truancy is no longer a criminal offense, a student who fails to attend school is still subject to serious consequences, including fines, the loss of driving privileges, and court-ordered truancy prevention programs. *See id.* Thus, the questioning occurred at a location where J.J. had a duty to be and from which he could not voluntarily leave.

What's more, the questioning occurred in an environment in which J.J. was required and expected to be cooperative with authority figures, such as the law enforcement officers who questioned him. The school setting is unique—an environment in which a reasonable juvenile *generally* will feel his freedom to be constrained. The typical juvenile is taught from a young age to submit to the authority of teachers, school officials, and law enforcement officers. As one court

4

has observed, "It is precisely *because* students are accustomed to having their actions directed by school authorities that a student who is told by a principal or teacher that he must speak with a law enforcement officer might reasonably believe that he is not free to leave the interview or break off questioning." *Kalmakoff v. State*, 257 P.3d 108, 123 (Alaska 2011).

The panel majority simply ignores the implications of the school setting in which J.J. was questioned, apparently not finding it relevant to its analysis. I disagree with this approach and believe the school setting is a significant factor tending to show J.J. was in custody at the time he made his confession. *See In re C.M.A.*, No. 03-12-00080-CV, 2013 WL 3481517, at *4 (Tex. App.—Austin July 2, 2013, no pet.) (mem. op.) (evidence tending to show reasonable 14-year-old would have believed his freedom of movement was significantly restricted included that juvenile "was removed from class and told to go to the principal's office—a place where a reasonable fourteen-year-old student might feel at least some degree of restraint"); *In re D.A.R.*, 73 S.W.3d 505, 512 (Tex. App.—El Paso 2002, no pet.) (holding facts showed reasonable 13-year-old would have believed his freedom of movement significantly restricted when questioned by police officer at school); *In re L.M.*, 993 S.W.2d at 290 (reversing trial court's denial of motion to suppress and holding juvenile was in custody when she made statement to police at children's shelter from which she "was not free to leave").

**The manner in which J.J. arrived at the interview room.** To arrive at the interview setting, J.J. was removed from class and escorted by the uniformed school resource officer. In other words, while in the custody of the school, J.J. was involuntarily removed from class by a law enforcement officer and escorted to the closed office where the questioning took place. The panel majority again ignores the circumstances under which J.J. arrived at the interview setting. And I again disagree with this approach and find these circumstances significant and tending strongly to show that J.J. was in custody when he made his confession. *See In re C.M.A.*, 2013 WL 3481517, at *4 (evidence tending to show reasonable 14-year-old would have believed his freedom of movement was significantly restricted included that juvenile was "escorted to a room within the principal's office by either the principal or the principal's secretary, either of whom a reasonable fourteen-year-old student might view as an authority figure"); *In re D.A.R.*, 73 S.W.3d at 512 (holding facts showed reasonable 13-year-old would have believed his freedom of movement significantly restricted when juvenile "was taken to the [school resource] officer's office by a uniformed security guard").

**The officers' failure to apprise J.J. of his rights.** Before questioning J.J., the officers failed to inform him that he had the right not to speak with them and that, in the event he did agree to speak with them, he had the right to terminate the interview and leave at any time. These admonishments are important because

6

juveniles are generally inexperienced with the legal system and therefore may not understand that they have the right to refuse to speak with the officers and the right to leave at any time. For this reason, the officers' failure here should be considered a significant factor tending to show J.J. was in custody. *See In re C.M.A.*, 2013 WL 3481517, at *4 (evidence tending to show reasonable 14-year-old would have believed his freedom of movement was significantly restricted included that interrogating officers "did not inform [juvenile] that he was free to terminate the interview and leave the room at any time"); *In re D.A.R.*, 73 S.W.3d at 512 (holding facts showed reasonable 13-year-old would have believed his freedom of movement significantly restricted when juvenile "was unaccompanied when he was questioned, and he was not told that he could leave or call an adult to join him"); *In re L.M.*, 993 S.W.2d at 290–91 (reversing trial court's denial of motion to suppress and holding juvenile was in custody when she made statement to police at children's shelter and she "was informed of her right to remain silent, her right to an attorney, and her right to terminate the interview" but "was not, however, told that she was free to leave the interview room or the children's shelter").

Based on the objective circumstances, and in particular the three factors just discussed, I would hold that a reasonable 14-year-old would have believed his freedom of movement was significantly restricted in J.J.'s situation. The panel majority disagrees and bases its holding on a different set of facts.

7

First, the panel majority emphasizes that "[t]he door to the room in which [J.J.] was questioned was unlocked" and that he "was nearest the door, and his access to the door was not restricted." But the door was also closed, and J.J. was questioned in the custodial setting of his school. *See In re C.M.A.*, 2013 WL 3481517, at *4 (evidence tending to show reasonable 14-year-old would have believed his freedom of movement was significantly restricted included that "[o]nce inside the room, the door was closed"); *In re D.A.R.*, 73 S.W.3d at 512 (holding facts showed reasonable 13-year-old would have believed his freedom of movement significantly restricted when "[t]he door, although unlocked, was closed").

Second, the panel majority states that the officers used "language indicat[ing] that [J.J.] could choose whether he wanted to sit and talk or not." The panel majority points to how, before the interview, the officers told J.J. "*if you want to* sit and talk to us that would be great." But here the panel majority mistakes an imposition for an invitation. Instead of informing J.J. that he had the right to decline to speak with them and the right to terminate the interview and leave at any time, the officers manipulated J.J. into speaking with them by using conditional language from which his right to do otherwise could only be inferred.

I disagree with the panel majority that a reasonable 14-year-old, under these circumstances, would infer from the officers' language that he could choose whether or not to speak with them. In this situation, a reasonable 14-year-old would not

conclude he had a choice unless the officers actually told him he had a choice. The officers failed to do so here. *See In re D.A.R.*, 73 S.W.3d at 512 (holding facts showed reasonable 13-year-old would have believed his freedom of movement significantly restricted when juvenile "was unaccompanied when he was questioned, and he was not told that he could leave or call an adult to join him"); *In re L.M.*, 993 S.W.2d at 290–91 (holding juvenile was in custody when she "was informed of her right to remain silent, her right to an attorney, and her right to terminate the interview at any time" but "was not, however, told that she was free to leave the interview room or the children's shelter").

Third, the panel majority emphasizes that J.J. "was allowed, as promised, to return to class" after the interview. I fail to understand how this fact is relevant. What happened *after* the interview is not evidence tending to show whether J.J. was in custody during the interview.

Fourth, the panel majority emphasizes that J.J. "never asked to speak to his mother." But J.J. was never offered the opportunity to do so. Because the officers never asked J.J. whether he wanted to speak with his mother, it's hardly reasonable to fault him for failing to ask—especially under these circumstances, where a reasonable 14-year-old would feel pressured to cooperate and speak with the officers. *See In re D.A.R.*, 73 S.W.3d at 512 (reasonable 13-year-old would have believed his freedom of movement significantly restricted when he "was

9

unaccompanied when he was questioned, and he was not told that he could leave or call an adult to join him"); *In re L.M.*, 993 S.W.2d at 291 (juvenile was in custody when she "was never told she could call her grandparents or any other friendly adult").

Fifth, the panel majority emphasizes that J.J. "was never restrained or handcuffed." I concede this fact tends to support a finding that J.J. was not in custody. But it is insufficient, by itself, to overcome the other dispositive factors, discussed above.

The panel majority contends the facts of this case are like those of two prior cases in which the court of appeals affirmed the juvenile court's ruling that the juvenile's statement did not stem from a custodial interrogation. *See In re J.W.*, 198 S.W.3d 327 (Tex. App.—Dallas 2006, no pet.); *Martinez v. State*, 131 S.W.3d 22 (Tex. App.—San Antonio 2003, no pet.). These cases are distinguishable.

*Martinez* is distinguishable by virtue of: (1) the age of the juvenile; and (2) the circumstances under which the juvenile arrived at the scene of the interview. The juvenile in *Martinez* was a 15-year-old high schooler, whereas J.J. was a 14-year-old middle schooler. *Martinez*, 131 S.W.3d at 27. And the juvenile in *Martinez* voluntarily drove with his mother to the police station where he was interviewed, whereas J.J. was involuntarily escorted by the school resource officer to the closed office where he was interviewed. *Id.* at 33.

10

There are likewise two factors that distinguish this case from *In re J.W.*: (1) once again, the age of the juvenile; and (2) the location at which the juvenile made the confession. The juvenile in *In re J.W.* was a 16-year-old high schooler, not a 14-year-old middle schooler. *In re J.W.*, 198 S.W.3d at 329. And the juvenile in *In re J.W.* made his confession at a high school football game—an event he voluntarily attended and could voluntarily leave. *Id.* J.J., on the other hand, made his confession at school on a school day during school hours—a location at which he was involuntarily present and from which he could not voluntarily leave.

The ways in which these cases are distinguishable are more important than the ways in which they are similar. Extending the reasoning of *Martinez* and *In re J.W.* here is a bridge too far. J.J. was younger than the juveniles in those cases. And he was interviewed under more coercive circumstances. The line needs to be drawn somewhere—and this case is a good starting point.

What parent wouldn't be outraged to learn that his or her child confessed to a crime at school after being involuntarily removed from class by a uniformed law enforcement officer, escorted to the closed office of a school administrator, and then introduced to and urged to speak with two police officers, neither of whom asked whether the child wanted to call a parent or advised the child of his rights to refuse to speak with them and to terminate the interview and leave at any time? And what parent wouldn't be outraged to learn his or her child wasn't considered to be in

11

"custody" in this situation? This opinion will not inspire confidence in our juvenile justice system's ability to do justice. I respectfully dissent.


                                        Gordon Goodman
                                        Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.

Justice Goodman, dissenting.

Publish. TEX. R. APP. P. 47.2(b).