# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00167-CR

**Willie Fred Houston, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. 9044116, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## O P I N I O N

A jury found Willie Fred Houston guilty of robbery, and the court sentenced him to forty years in prison. *See* Tex. Pen. Code Ann. § 29.02 (West 2003). Houston appeals his conviction, contending that the trial court erred by overruling his motion to suppress his confession, that the trial court abused its discretion by admitting evidence of the existence of a Crime Stoppers tip, and that the trial court abused its discretion by failing to grant his request for a mistrial. We affirm the judgment of conviction.

## BACKGROUND

Houston was convicted of a robbery that took place in the early morning hours of January 1, 2004, at a Diamond Shamrock convenience store in central Austin. The robbery was

captured on the store's security camera. The robber approached store employee Esedar Abegaz and announced "this is a robbery." The robber then told Abegaz, "I'm not playing. I have a pistol. Give me all your twenties." Abegaz opened the cash register, and the robber grabbed the money and left. It was later determined that $28 was taken from the register. The security footage contained clear images of the robber, who was neatly dressed in a sport jacket, dark slacks, dress shoes, and thick glasses.

Detective Dennis Clark of the Austin Police Department was assigned to investigate the case. Clark, who had received a Crime Stoppers tip that Houston was involved in the robbery, produced still photographs of the robber from the security footage. On January 8, Houston voluntarily came to the police station to speak with Detective Michelle Woodfin about his possible involvement in an assault. Clark was informed that Woodfin was questioning Houston and joined the two in an interrogation room at the police station. Although Woodfin's initial questioning of Houston was not recorded, Clark activated a hidden video camera before entering the room.

Clark immediately confronted Houston with a photograph from the robbery:

> You're wearing the same coat. Too close to the camera Willie. You got too close to the camera. Yeah, you've got glasses on but it's you. . . . This convenience store is on Guadalupe. I think you remember it. Girl attendant. Yeah you do. You've got people snitching you off anyway. Let me read you your rights. Have a seat.

After detailing a bit of the evidence of Houston's guilt, Clark read Houston the *Miranda* warnings. Houston responded that he understood his rights and did not want to speak with Clark about the robbery:

Clark:      Do you agree to that?  Do you agree to waive your rights so that you can talk to me?

Houston:  No.  I'm not gonna [inaudible].[1]

Clark:      That's fine.  I'm going to have to do what I'm going to have to do.

Detectives Woodfin and Clark then began asking Houston to admit his involvement in the robberies. They assured Houston of the strength of the State's case and appealed to him to tell his side of the story.  The detectives also told Houston that he was not under arrest:

Houston:  Are you going to arrest me now?

Clark:      No sir, I am not going to arrest you now.  You know what's going to happen though.  How did you get down here?

Houston:  I got a ride.

Clark:      Did your momma bring you down here?  Is she here?  No?  Your momma's not downstairs?

Clark again urged Houston to admit to the robbery:

Now, I'm going to ask you again you know, I've read you your rights and you understand your rights and I'm going to ask you one more time sit down and talk to me Willie.  This is silly.  You know I've got you.

---

[1] In Court's Exhibit 1, Houston's response is transcribed as "No, I don't want to talk about anything [difficult to hear]."  Although Houston's exact response is inaudible, it is clear from the video that he expressed his desire not to make a statement.

3

Houston then admitted that, since his release from prison, he had resumed smoking crack and had committed several robberies, including the one at the Diamond Shamrock store. After Houston provided details of the robberies, Clark told Houston that he would be released that day if Houston agreed to turn himself in once a warrant was issued for his arrest. Before the interview ended, another officer pulled Clark aside and told him of allegations that Houston had set fire to his girlfriend's home. Clark then explained to Houston that he would not be allowed to leave based on this new information.

## DISCUSSION

**Motion to Suppress**

In his first two points of error, Houston contends that his inculpatory statements should have been suppressed because he was subjected to custodial interrogation after he had told the police that he wished to remain silent. *See* U.S. Const. amends. V, XIV; Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005); *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966). It is settled law that custodial interrogation must cease once a person invokes his right to remain silent. *Miranda*, 384 U.S. at 473-74; *Maestas v. State*, 987 S.W.2d 59, 61 (Tex. Crim. App. 1999) (right to remain silent and cut off questioning must be scrupulously honored). However, the protections afforded under *Miranda* and article 38.22 of the code of criminal procedure require that a person be in custody. *See Stansbury v. California*, 511 U.S. 318, 322 (1994); Tex. Code Crim. Proc. Ann. art. 38.22 §§ 2, 3. The custody requirement stems from the underlying purpose of *Miranda*, to protect an individual from the "inherently compelling pressures" of custodial interrogation. *Arizona v. Roberson*, 486

U.S. 675, 681 (1988) (quoting *Miranda*, 384 U.S. at 467). Absent these pressures, it is presumed that a person will freely assert his privilege against self incrimination and no protection is needed.

A person is in custody if, under the totality of the circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury*, 511 U.S. at 322; *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). The initial determination of custody depends on the objective circumstances of the interrogation, not the subjective views of the police or the person being questioned. *Stansbury*, 511 U.S. at 323; *Dowthitt*, 931 S.W.2d at 254. The subjective views of the police regarding custody may be relevant as a circumstance of the interrogation if they are conveyed to the individual being questioned, but only to the extent that the communication of those views would affect a reasonable person's understanding of his freedom of action. *See Stansbury*, 511 U.S. at 325; *Dowthitt*, 931 S.W.2d at 254. Stationhouse questioning is not, in and of itself, custodial. *Dowthitt*, 931 S.W.2d at 255; *see Oregon v. Mathiason*, 429 U.S. 492, 496 (1977). But "the mere fact that an interrogation begins as non-custodial does not prevent custody from arising later; police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation." *Dowthitt*, 931 S.W.2d at 255.

The parties agree that Houston voluntarily came to the police station in order to speak with Detective Woodfin about an unrelated matter and that he was not in custody prior to Detective Clark's arrival. Houston contends that custody arose soon after Clark began questioning him. Indeed, some of Clark's actions indicate that Houston was in custody. Clark read Houston *Miranda*

5

warnings—a recitation that has become synonymous in our culture with formal arrest.**²** Clark searched through the pockets of Houston's sport coat, while he was not wearing it, without Houston's consent.**³** Clark also conveyed the strength of the State's case to Houston, including the fact that Houston resembled and was wearing the same clothes as the man pictured in the videotape of the robbery.

However, the detectives explicitly told Houston that he was not under arrest prior to his confession. Other statements by the detectives made before Houston's confession also implied that Houston was not under arrest and was free to go:

> Clark:      But, like I told you, yeah, there's other people out there that's already told us that your doing the robberies of the convenience stores. Now, I'm glad that you ain't done that damn many of them yet. Don't do any more until we get you arrested, okay? That just ain't gonna do you no good.
>
> Woodfin: Willie, you walk out of here and you lose your chance to tell us how you honestly feel.

---

[2] The reading of *Miranda* warnings does not transform a noncustodial setting into custodial interrogation. *See United States v. Bautista*, 145 F.3d 1140, 1148 (10th Cir. 1998); *Sprosty v. Buchler*, 79 F.3d 635, 642 (7th Cir. 1996); *Davis v. Allsbrooks*, 778 F.2d 168, 172 (4th Cir. 1985) (to hold that *Miranda* warnings create custody "would convert admirable precautionary measures on the part of officers into an investigatory obstruction"); *United States v. Charles*, 738 F.2d 686, 693 n.6 (5th Cir. 1984). However, the giving of *Miranda* warnings is a factor in the determination of whether a reasonable person would believe that he is under arrest. *See Bautista*, 145 F.3d at 1048; *Sprosty*, 79 F.3d at 642. Moreover, there may be "circumstances where a clash of wills over a suspect's desire to remain silent would create custody through overbearing police behavior." *Davis*, 778 F.2d at 172 n.1.

[3] The trial court granted Houston's motion to suppress a pair of glasses found by Detective Clark in Houston's coat. The district court explained that because Houston was not in custody, that State could not "have it both ways" and Clark could not legally search Houston's jacket without consent.

6

Clark's post-confession arrangements for Houston to turn himself in confirm Clark's subjective belief that Houston was not in custody.

On this record, we find that a reasonable person would not have believed his freedom of movement was restrained to the degree associated with a formal arrest. *See Stansbury*, 511 U.S. at 322; *Dowthitt*, 931 S.W.2d at 254. Although there was probable cause to arrest and the strength of the State's case was readily apparent to all, the existence of probable cause is only a factor in determining custody when "law enforcement officers *do not* tell the suspect he is free to leave." *Dowthitt*, 931 S.W.2d at 255 (emphasis added). Here, the detectives specifically told Houston that he was not under arrest and implied through their questioning that he could leave. Moreover, the district court rejected Houston's argument that the detectives' statements that Houston was not under arrest were a "ruse," and we defer to the trial court's determination of the detectives' credibility in this regard. Having found that Houston was not in custody, we overrule his first two points of error.

**Crime Stoppers Evidence**

In his third point of error, Houston contends that the trial court abused its discretion when it overruled his hearsay objection to Detective Clark's testimony that Houston was identified as a suspect through a Crime Stoppers tip. Houston argues that the mention of the Crime Stoppers tip permitted the jury to improperly infer that some unknown source had implicated Houston in the robbery.

In *Schaffer v. State*, the court of criminal appeals held that the hearsay rule may not be circumvented by inference. 777 S.W.2d 111, 114 (Tex. Crim. App. 1989). In that case, the

7

defendant asserted that he had committed the crime charged in his role as a police informant. *See id*. at 112-13. The investigating officer was permitted to testify that he spoke with the officer for whom the defendant claimed to be working and that, based on his conversation, he would not "ask the State to drop charges against [the defendant]." *Id*. at 113. The court of criminal appeals stated that the sole intent of this line of questioning was to convey to the jury that the investigating officer had been told that the defendant was not an informant. *Id*. at 114. Because the out-of-court statement was offered for its truth, the court held that it was hearsay. *Id*. at 115.

In doing so, the court of criminal appeals distinguished this inferential hearsay from out-of-court statements offered to provide necessary context:

> Frequently, testimony will have an impermissible hearsay aspect along with a permissible nonhearsay aspect. Almost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident; thus, it is permissible for her to testify that she was acting in response to "information received." "[A]n arresting officer should not be put in the false position of seeming just to have happened upon the scene, he should be allowed some explanation of his presence and conduct." A police officer, however, should not be permitted to relate historical aspects of the case, replete with hearsay statements in the form of complaints and reports on the grounds that she was entitled to tell the jury the information upon which she acted.[4]

*Id*. at 114 (internal citation omitted); *see also* McCormick on Evidence, § 249, at 735 (3d ed. 1984). However, the court cautioned of the potential for abuse in which officers are permitted to relate out-

---

[4] We note that details of out-of-court statements may be admissible if "the officer's conduct has been challenged, for instance, as lacking probable cause." *Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005).

of-court statements under the guise of providing context. *Schaffer*, 777 S.W.2d at 114-15 n.3.[5]

"The appropriate inquiry focuses on whether the 'information received' testimony is a general description of possible criminality or a specific description of the defendant's purported involvement or link to that activity." *Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005).[6]

Here, the testimony in question was Detective Clark's statement that he developed a lead in his investigation of the robbery from a Crime Stoppers tip implicating Houston. This testimony did not reveal the details of the tip or comment on the reliability of its source. *See Schaffer*, 777 S.W.2d at 114 n.3; *McCullough v. State*, 116 S.W.3d 86, 89 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (Baird, J., dissenting) (criticizing admission of testimony that Crime Stoppers tip "gave us the name of [appellant] that was responsible for robbing this hotel"). Clark's reference to Crime Stoppers was merely a general description of possible criminality that provided a necessary explanation for why Clark developed Houston as a suspect and interviewed him. *See*

---

[5] The court of criminal appeals singled out its own opinion in *Locke v. State*, 334 S.W.2d 292, 293 (Tex. Crim. App. 1960), in which an officer was permitted to testify that he acted on "information *received from a reliable source*" as an example of overreaching. *See Schaffer v. State*, 777 S.W.2d 111, 114 n.3 (Tex. Crim. App. 1989).

[6] This recent statement of the inquiry from the court of criminal appeals differs from our prior holding that testimony is "backdoor hearsay" only if "the sole intent in introducing the evidence was to prove the contents of the out-of-court statement." *Gurka v. State*, 82 S.W.3d 416, 421 (Tex. App.—Austin 2002, pet. ref'd). We will follow the more recent standard set forth by the court of criminal appeals. *See Poindexter v. State*, 153 S.W.3d at 408 n.21.

*Poindexter*, 153 S.W.3d at 408 n.21. Accordingly, we hold that the district court properly admitted Clark's brief reference to a Crime Stoppers tip.

Even if the admission of the Crime Stoppers testimony was error, it was harmless under rule of appellate procedure 44.2(b). We must disregard a non-constitutional error that does not affect Houston's substantial rights. Tex. R. App. P. 44.2(b); *see also* Tex. R. Evid. 103(a) (error may not be predicated on ruling admitting or excluding evidence unless substantial right of party affected). We may not reverse if, after examining the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Having closely examined the record in this case, we are fairly assured that any error in admitting the reference to the Crime Stoppers tip had no substantial and injurious effect on the jury's verdict. *See id.* Houston confessed to the crime, and the victim of the robbery testified that she was eighty-percent sure that Houston was the man who robbed her. Furthermore, Houston was easily identified from the security videotape of the robbery and appeared at the police station wearing the same jacket as the one pictured in the video of the robbery. Although the single reference to the Crime Stoppers tip may have bolstered the State's case on identity, there was other, overwhelming evidence of guilt. We overrule Houston's third point of error.

**Extraneous Offenses**

In his fourth point of error, Houston contends that the trial court erred by denying his request for a mistrial after Detective Clark made reference to "three cases" that Houston was alleged to have been involved with. Houston's objection came during the following exchange:

> Q. Then what is the meaning behind "I advised him he's going to prison and all we need to talk about is how long?" Why would he need to talk to you if you couldn't control that?
>
> A. Well, there were three cases that he was . . .

Clark's response was interrupted by an objection that the answer was non-responsive. The district court sustained the objection and instructed the jury to disregard Clark's answer.

"Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). A mistrial is appropriate for only a narrow class of highly prejudicial and incurable errors. *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). We review a court's decision to deny a request for a mistrial under an abuse of discretion standard. *Id*. (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). In this case, Clark's improper testimony was interrupted, and the jury was immediately instructed to disregard the testimony. Such a vague reference to "three cases," immediately followed by an instruction to disregard, did not so infect the trial with error that an impartial verdict could not be reached. *See id*. Moreover, the same testimony had already been elicited by Houston's counsel without objection. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (erroneous admission of testimony not cause for reversal if same fact proven by other testimony not objected to). Accordingly, we overrule Houston's fourth point of error.

## CONCLUSION

Having overruled all of Houston's points of error, we affirm the judgment of conviction.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   February 16, 2006

Publish