Affirmed and Majority and Concurring Memorandum Opinions filed December
18, 2008








Affirmed and Majority and Concurring Memorandum Opinions filed December 18,
2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00468-CR

_______________

 

DARRYL ONEAL RANDALL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 1000233

                                                                                                                                               


 

M A J OR I T Y  M E M O R A N D U M  O P I N I O N

Darryl
Oneal Randall appeals his conviction for aggravated robbery.  In three issues,
appellant contends (1) the trial court abused its discretion by denying
appellant=s motion to suppress his statement to police officers, (2) the trial
court erred by refusing to submit a requested jury instruction, and (3)
appellant received ineffective assistance of counsel.  Because all dispositive
issues are clearly settled in law, we issue this memorandum opinion and
affirm.  See Tex. R. App. P. 47.4.

 








I.  Background

According
to the State=s evidence, on July 19, 2004, appellant and two accomplices  robbed a
Goodwill store in Houston.  Appellant, a store employee, was working at the
time of the robbery, which occurred shortly after the store closed.  Gill Lee,
the store manager, and Teresa Rivera, a cashier, were in an office counting
money, consistent with their typical closing routine.  During this time,
appellant entered and exited the office several times.  At one point, in
response to his inquiry, appellant was told the store Amade budget@ for the day.  The last time
appellant entered the office, a man wearing a ski mask and holding a handgun
was behind him.  Appellant put his hands up and then got down on the floor,
although no one instructed him to do so.  Lee told the men to quit Aplaying.@  The masked man replied that they
were not Aplaying.@  He ordered Lee and Rivera to get on the floor and forced Lee to place
money in a bag and her purse.  During the robbery, the masked man also
communicated with another person via Awalkie-talkie.@  Appellant exited the office after
the robbers left.[1]  Lee and
Rivera ran to another office where an employee called the police.

Subsequently,
Barkley Wedemeyer, a vice-president with Goodwill Industries of Houston, and
Lori Roberts, a Houston police officer, viewed a surveillance tape of the store=s interior, recorded the day of the
robbery.  The tape indicated appellant was a participant in the robbery, rather
than a victim.  Apparently, the tape showed that appellant allowed the two
accomplices to enter through a back door and willingly accompanied them to the
office where the robbery occurred.[2]








Three
days after the robbery, Officer Roberts and Officer John Bonnette went to the
store and interviewed appellant.  Because appellant challenges admission of his
statement, we will discuss the interview in more detail below.  However, in
essence, appellant implicated himself in the robbery to some extent.  The
officers arrested appellant approximately two months after the interview. 

Before
trial, appellant filed a motion to suppress his statement, asserting, among
other grounds, the officers failed to give Miranda warnings.  During
trial, after conducting a hearing outside the jury=s presence, the court overruled the
motion.  Subsequently, the jury heard, in addition to other evidence, an
audiotape of appellant=s interview and Officer Roberts=s testimony regarding the statement. 
The jury found appellant guilty of aggravated robbery of Gill Lee.  The trial
court sentenced appellant to fifty-five years= confinement.

II.  Motion to Suppress

In his
first issue, appellant contends the trial court abused its discretion by
denying appellant=s motion to suppress his statement because it was obtained by
officers in violation of Miranda v. Arizona and Texas Code of Criminal
Procedure article 38.22.[3]

A.        Standard of Review and
Applicable Law








We apply
a bifurcated standard to review a trial court=s ruling on a motion to suppress
evidence.  See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We afford almost total deference to a trial court=s determination of historical facts
and its ruling on mixed questions of law and fact if the resolution of those
questions turns on an evaluation of credibility and demeanor.  Id.  We
review de novo mixed questions of law and fact that do not turn on an
evaluation of credibility and demeanor.  Id.

In Miranda
v. Arizona, the United States Supreme Court held, A[T]he prosecution may not use
statements, whether exculpatory or inculpatory, stemming from custodial
interrogation of the defendant unless it demonstrates the use of procedural
safeguards effective to secure the privilege against self-incrimination.@ 384 U.S. 436, 444 (1966).  The
Texas Legislature has codified these procedural safeguards in the Code of
Criminal Procedure.  See Tex. Code Crim. Pro. Ann. art. 38.22 (Vernon
2005).  Specifically, article 38.22, section 3 prohibits admission of an
accused=s oral statement made as a result of
custodial interrogation unless, among other requisites, the Miranda
warnings and one additional warning prescribed in article 38.22 were given, and
the accused knowingly, intelligently, and voluntarily waived any rights set out
in the warnings.  Id. ' 3(a).

In this
case, it is undisputed the officers did not give appellant these warnings
during his interview.  Thus, we must decide whether the statement resulted from
Acustodial interrogation.@  ACustodial interrogation@ means Aquestioning initiated by law
enforcement officers after a person has been taken into custody or otherwise
deprived of his freedom of action in any significant way.@  Miranda, 384 U.S. at  444.  AA person is in >custody= only if, under the circumstances, a
reasonable person would believe that his freedom of movement was restrained to
the degree associated with a formal arrest.@  Dowthitt v. State, 931
S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing Stansbury v. California,
511 U.S. 318, 322 (1994)). 








The Acustody@ determination must be made on a case
by case basis considering all objective circumstances of the interrogation.  Stansbury,
511 U.S. at 323;  Dowthitt, 931 S.W.2d at 255.  Subjective intent of law
enforcement officials to arrest is irrelevant unless that intent is somehow
communicated or otherwise manifested to the suspect.  Id. at 254 (citing
Stansbury, 511 U.S. at 324B25).  Further, the mere fact that an
interrogation begins as noncustodial does not prevent custody from arising
later; police conduct during the encounter may cause a consensual inquiry to
escalate into custodial interrogation.  Id. at 255.

The
Texas Court of Criminal Appeals has outlined at least four general situations
that may constitute custody: (1) when the suspect is physically deprived of his
freedom of action in any significant way; (2) when a law enforcement officer
tells the suspect he cannot leave; (3) when law enforcement officials create a
situation that would lead a reasonable person to believe that his freedom of
movement has been significantly restricted; and (4) when there is probable
cause to arrest and law enforcement officers do not tell the suspect he is free
to leave.  Id.

Appellant
argues only that the fourth situation is applicable in this case.  Concerning
the fourth situation, Stansbury dictates that the officers= knowledge of probable cause be
manifested to the suspect.  Id.  Such manifestation could occur if
information substantiating probable cause is related by the officers to the
suspect or by the suspect to the officers.  Id.  Further, because
probable cause is a Afactor@ in the custody determination, Asituation four does not automatically
establish custody; rather, custody is established if the manifestation of probable
cause, combined with other circumstances, would lead a reasonable person to
believe that he is under restraint to the degree associated with an arrest.@  Id.

B.        The Interview








At the
motion-to-suppress hearing, the circumstances of appellant=s interview were established by the
audiotape of the interview and Officer Roberts=s undisputed testimony.[4]
Officer Roberts testified that, at the time of the interview, appellant was not
under arrest and no warrant had been issued for his arrest.  At the outset of
the interview, Officer Roberts informed appellant he was not under arrest. 
Appellant agreed to speak with the officers and never requested an attorney. 
Officer Roberts first asked appellant to explain what occurred on the day of
the robbery.  Appellant responded that he went to lock the back door.  When he
was at the back of the store, two masked men entered, placed guns in his face,
walked him to the office, and threw him down on the floor. 

Officer
Roberts then confronted appellant regarding inconsistencies between this
explanation and the actions depicted on the surveillance tape.  Officer Roberts
emphasized that the tape reflected the accomplices did not wear masks or
brandish guns when they initially encountered appellant and began accompanying
him to the office.  While urging appellant to reveal the truth, Officer Roberts
made several statements effectively manifesting probable cause: appellant was Ajust as guilty@ as the others even if he did not
carry a gun or physically take the money because he Aknew what was going on@; this statement was his opportunity
to do Adamage control@ because he was presently in Aa world of shit@; and if he intended to stand by his
first version, she would present the evidence to the ADA=s office.@

Appellant
then admitted the accomplices had previously approached him and revealed their
intent to rob the store, but appellant claimed he did not give them Apermission@ or know when the robbery would
occur.  Officer Roberts questioned this claim by stating the surveillance tape
showed that appellant watched the accomplices drive into the loading dock area
behind the store before the robbery, although he knew no one should have been
in the area.  Officer Roberts again highlighted that the accomplices followed
appellant into the building without wearing masks or carrying guns.  Officer
Roberts reiterated that she wanted to know the truth, particularly the identity
of the accomplices and how they approached appellant about the intended
robbery.








Officer
Bonnette also made statements effectively manifesting probable cause to
appellant.  Specifically, he said that appellant needed to do Adamage control@ because Awe got you if we want you@ and Acan go down to the DA=s office.@  Officer Bonnette again informed
appellant he was not under arrest, but the officers wanted to know how the
robbery occurred, the identity of the participants, and how the proceeds were
distributed.

Appellant
then repeated that he knew the robbery was planned but did not know the
intended date although the accomplices had indicated it would occur at closing
time.  Appellant stated that, on the evening of the robbery, the accomplices
came to the back door and asked Awhat=s going on?@ and the number of persons in the
store.  Appellant replied that the store was closed and only a few employees
were present.  The accomplices asked, Ado you think it=s cool?@ Appellant responded that he Acan=t say@ because Aain=t nobody there.@  He claimed the accomplices were
waiting at the back when he went to the area.  Officer Roberts again told
appellant the surveillance tape showed that he was waiting at the back of the
store when the accomplices drove up.  The officers also stated that the tape
indicated appellant allowed the accomplices to enter the store, but appellant
never admitted this fact.  Appellant acknowledged he was promised some robbery
proceeds although he had not yet received any money.  

The
remainder of the interview was devoted to the officers= attempts to ascertain the identity
of the accomplices.  Eventually, appellant provided the name of one
accomplice.  In addition, the officers and appellant reviewed numbers stored in
appellant=s cellular phone attempting to locate numbers of the accomplices.

Finally,
at the motion-to-suppress hearing, Officer Roberts testified she did not tell
appellant that he was not required to speak with her.  In addition, the
audiotape indicates the officers did not explicitly tell appellant he was free
to leave.

C.        Analysis








We apply
a de novo standard of review because the pertinent facts are undisputed and the
only issue is whether the trial court correctly applied the law to those
facts.  See Guzman, 955 S.W.2d at 89.  For our analysis, we
discern two distinct portions of the interview: (1) appellant=s initial explanation, claiming he
was a victim; and (2) his subsequent statement, implicating himself in the
robbery, albeit not to the extent reflected on the surveillance tape.

Because
the officers did not manifest probable cause to appellant during the first 
part of the interview, the fourth Dowthitt scenario was not satisfied
with respect to appellant=s initial explanation.  Accordingly, we focus on the second
part of the interview.

Despite
the officers= manifestation of probable cause to appellant during the second part of
the interview and their failure to explicitly inform appellant he was free to
leave, we conclude the fourth Dowthitt scenario was not satisfied. 
Specifically, a reasonable person in appellant=s situation would not believe that he
was under restraint to the degree associated with an arrest. 

Significantly,
at the outset of the entire interview, the officers unequivocally informed
appellant he was not under arrest.  During the second portion of the interview,
the officers reiterated that appellant was not under arrest, even while
effectively manifesting they had probable cause to arrest.  Further, by
asserting they might present the case to the ADA=s office@ in the future, the officers
effectively communicated appellant was not in custody, although he might
eventually be arrested.  Therefore, the officers implied that appellant was
free to leave.  Indeed, appellant was not arrested that day.








In
addition, the audiotape reflects that the officers clearly indicated the
primary focus of the interview was discovering details of the robbery and the
identity of appellant=s accomplices, rather than obtaining sufficient information
to arrest appellant that day.  The officers urged appellant to help himself by
revealing information about the accomplices.  In fact, at one point, Officer Bonnette
assured appellant the accomplices would not know he revealed their identities. 
Appellant responded that he understood Ay=all are working for me@ and Ay=all are giving me an opportunity.@  We recognize that appellant=s subjective belief alone is
irrelevant to the custody determination, and we instead consider the words and
actions of the officers.  See Dowthitt, 931 S.W.2d at 254. 
However, appellant=s response at least indicates that he construed the officers= assertions regarding the purpose of
the interview consistent with our interpretation.  Appellant=s response supports a conclusion that
a reasonable person would not believe he was under restraint to the degree
associated with an arrest.

Moreover,
appellant=s interview was conducted at his place of employmentCin a vacant office at the storeCas opposed to a police station. 
During the interview, the officers even allowed appellant to receive a call on
his cellular phone about a prospective job.  These facts alone might not negate
custody.  However, when considered with all circumstances of the interview,
these facts support a conclusion that appellant was not in custody.








The
present case is similar in pertinent respects to Houston v. State, 185
S.W.3d 917 (Tex. App.CAustin 2006, pet. ref=d).  In Houston, an
investigating officer received a tip, and a security camera revealed, that the
defendant was involved in the robbery of a convenience store.  Id. at
919.  The officer spoke with the defendant while he was voluntarily at the
police station being questioned by another detective about an unrelated
offense.  Id.  The officer confronted the defendant with the evidence demonstrating
his involvement in the robbery and read the Miranda warnings.  Id. 
At some point, the officer also searched the defendant=s sport coat while he was not wearing
it, without his consent.  Id. at 921.  The defendant initially refused
to waive his rights and speak about the robbery.  Id. at 919.  Both
officers then assured the defendant regarding the strength of the State=s case and again urged him to
confess.  Id. at 919B20.  The officers explicitly told the defendant he was not
under arrest.  Id. at 919.  The officers also made other statements
implying that the defendant was not under arrest and was free to leave: they
requested that he refrain from committing any more robberies until Awe can get you arrested@ and stated, Ayou walk out of here and you lose
your chance to tell us how you honestly feel.@  Id. at 921.  The defendant
finally admitted committing several robberies, including the one at issue.  Id.
at 920.  The investigating officer then told the defendant he would be released
that day if he agreed to turn himself in once a warrant for his arrest was
issued.  Id.  However, subsequently, the defendant was not allowed to
leave the station because the officers received new information that he had
committed another unrelated offense.   Id.

The
defendant moved to suppress his confession pursuant to Miranda and
article 38.22 on the ground that the purportedly custodial interrogation should
have ceased once he invoked his right to remain silent.   Id.  The court
of appeals held that the defendant was not in custody when he made his
confession.  Id. at 920B21.  The court recognized that some of the officers= actions indicated a custodial
interrogation: reading the Miranda warnings, which are synonymous in our
culture with formal arrest; searching the defendant=s coat; and conveying the strength of
the State=s case.  Id. at 921.  Nevertheless, the court held that a
reasonable person would not have believed his freedom of movement was
restrained to the degree associated with a formal arrest.  See id. 
The court relied on facts that are similar to the present case: the officers
explicitly told the Houston defendant he was not under arrest, implied
that he was free to leave, and effectively stated that, if he left the station
without confessing, he would lose the opportunity to provide his version.  See
id.  Consequently, we conclude that Houston is instructive.  See
id.; see also Oregon v. Mathiason, 429 U.S. 492, 493B96 (1977) (holding defendant was not
in custody when he confessed to burglary during voluntary questioning at police
station; although officer relayed information to defendant regarding his
involvement and stated his truthfulness might be considered by the district
attorney or judge, officer also told defendant he was not under arrest, and he
was allowed to leave after confession).








Appellant
primarily relies on In re D.A.R., 73 S.W.3d 505 (Tex. App.CEl Paso 2002, no pet.).  When
initially questioned by a school police officer, D.A.R., a thirteen-year-old
student, denied a report by a fellow student that he possessed a weapon on
school grounds.  Id. at 508.  Later the same day, the officer summoned
D.A.R. and told him that approximately fifteen students had since reported that
D.A.R. brought a gun to school and it would be best if he relinquished it.  Id.
at 508, 512.  D.A.R. then confessed to possessing the gun and showed the
officer its location.  Id. at 508.  D.A.R. was read the Miranda
warnings and arrested.  Id.  The court held that D.A.R. was in custody
when he made his confession because the officer manifested probable cause when
he informed D.A.R. of the information provided by fellow students and pressed
him to reveal the gun=s location and the officer had not told D.A.R. he was free to
leave.  See id. at 511B12.  Appellant asserts that he was
likewise in custody when he admitted some participation in the robbery because,
after he  initially denied any involvement, the officers recited contradictory
evidence and urged him to tell the truth. 

Appellant
also posits that this case is similar to Miller v. State, 196 S.W.3d 256
(Tex. App.CFort Worth 2006, pet. ref=d).  Several officers met with Miller, a confidential police
informant, to ascertain his knowledge regarding drug trafficking.  Id.
at 262B63.  During the meeting, a person
believed to be involved in narcotics activities repeatedly attempted to phone
Miller.  Id. at 263.  Miller admitted that the call involved his receipt
the previous day of money relative to a narcotics transaction.  Id.  The
officers informed Miller he had violated the confidential-informant agreement
through this activity.  Id.  When an officer asked whether Miller
possessed any drugs at his house, he replied affirmatively.  Id.   While
searching the home, officers discovered drugs.  Id.  Subsequently, they
read Miller the Miranda warnings, and he was arrested.  Id.  The
court of appeals held that Miller was in custody once the officers asserted he
had violated the confidential-informant agreement by conducting an illegal act
because he had become the focus of the investigation and had relayed
information amounting to probable cause.  Id. at 265.  Appellant
contends that he was likewise in custody during his interview because he became
the focus of the investigation after Officer Roberts viewed the surveillance
tape. 








However,
unlike the present case, there is no indication the officers ever told D.A.R.
and Miller they were not under arrest; and D.A.R. and Miller were arrested the
day of their interviewsCafter they confessed and the illegal objects at issue, i.e.
the gun and drugs, were found.  See D.A.R., 73 S.W.3d at 508B13; Miller, 196 S.W.3d
at 261B67. Moreover, in contrast to the
present case, the D.A.R. court emphasized that D.A.R. was only thirteen
years old, the pertinent part of his interview occurred in the office of the
school police officer with the door closed, and D.A.R. had been escorted there
by another uniformed security officer.  See D.A.R., 73 S.W.3d at
510B12.  Therefore, we conclude that D.A.R.
and  Miller are not controlling.

In sum,
considering all the objective circumstances, we hold that appellant was not in
custody under the fourth Dowthitt scenario.  Accordingly, the trial
court did not err by denying appellant=s motion to suppress.  We overrule
appellant=s first issue.

III.  Jury Instruction

In his
second issue, appellant complains that the trial court refused to submit a jury
instruction pursuant to Texas Code of Criminal Procedure article 38.23(a),
which provides:

No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises
an issue hereunder, the jury shall be instructed that if it believes, or has a
reasonable doubt, that the evidence was obtained in violation of the provisions
of this Article, then and in such event, the jury shall disregard any such
evidence so obtained.

Tex. Code Crim. Proc.
Ann. art. 38.23(a) (Vernon 2005).

At
trial, appellant requested an article 38.23(a) instruction, contending an issue
existed on whether his statement to the police officers resulted from custodial
interrogation.  The trial court denied appellant=s request.  








An
article 38.23(a) instruction is required only if the evidence heard by the jury
raises a disputed issue of fact that is material to the defendant=s Aclaim of a constitutional or
statutory violation that would render evidence inadmissible.@  Madden v. State, 242 S.W.3d
504, 509B11 (Tex. Crim. App. 2007); see
Garza v. State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004). If there is no
disputed issue of fact, legality of the challenged conduct is a question of law
to be decided solely by the trial court.  Madden,  242 S.W.3d at 510. 

In this
case, there were no disputed issues of fact material to the custody
determination.  Officer Roberts=s trial testimony regarding appellant=s interview was similar in pertinent
respects to her testimony at the motion-to suppress hearing.  In addition, the
jury heard the audiotape of the interview.  Appellant did not testify or
present any evidence disputing Officer Roberts=s trial testimony or the contents of
the audiotape.  Further, there were no internal inconsistencies in Officer
Roberts=s trial testimony raising a factual
dispute.  Therefore, the custody determination was a question of law based on
undisputed facts.  Accordingly, appellant was not entitled to submission of an
article 38.23(a) instruction.  We overrule his second issue.

IV.  Assistance of Counsel

In his
third issue, appellant argues he received ineffective assistance of counsel. 
To prevail on an ineffective-assistance claim, an appellant must prove (1)
counsel=s representation fell below the
objective standard of reasonableness, and (2) there is a reasonable probability
that, but for counsel=s deficiency, the result of the proceeding would have been
different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).








Appellant
generally claims his counsel was ineffective by failing to request a jury
instruction pursuant to article 38.22.  However, article 38.22 outlines two
different situations in which a trial court is required to submit a jury instruction. 
See Tex. Code Crim. Proc. Ann. art. 38.22 '' 6, 7 (Vernon 2005).  Appellant does
not identify which instruction his counsel purportedly should have requested. 
Nevertheless, appellant has failed to demonstrate that counsel was deficient by
failing to request either instruction.

Article
38.22, section 6 outlines a Ageneral voluntariness@ instruction.  See id. ' 6; Oursbourn v. State, 259
S.W.3d 159, 174 (Tex. Crim. App. 2008).  Once Aa question is raised@ under section 6 regarding the
voluntariness of a defendant=s statement, the trial court must, among other requisites,
(1) make an independent finding in the absence of the jury as to whether the
statement was made under voluntary conditions and (2) upon finding as a matter
of law and fact that the statement was voluntarily made, instruct the jurors
they shall not consider the statement for any purpose unless they believe
beyond a reasonable doubt that the statement was made voluntarily. See
Tex. Code Crim. Proc. Ann. art. 38.22, ' 6; Oursbourn, 259 S.W.3d at
174B75.  The section 6 instruction does
not require a factual dispute, but the parties must actually litigate a section
6 voluntariness issue before a jury instruction is necessary.  See Oursbourn,
259 S.W.3d at 175B76.

At
trial, appellant did not raise a question regarding general voluntariness of
his statement under section 6.  Instead, appellant suggested that his statement
was inadmissible pursuant to Miranda and Article 38.22, section 3
because it resulted from custodial interrogation but he was not given the
required warnings.[5]  Therefore,
appellant was not entitled to submission of an article 38.22, section 6
instruction.  See id. at 174B76. Accordingly, counsel was not
deficient by failing to request such an instruction.  See Hardin v.
State, 951 S.W.2d 208, 211 (Tex. App.CHouston [14th Dist.] 1997, no pet.)
(rejecting appellant=s claim that counsel was ineffective by failing to request
adequate article 38.23 instruction where appellant was not entitled to
instruction).








Article
38.22, section 7 outlines a Astatutory warnings@ instruction.  See Tex. Code
Crim. Proc. Ann. art. 38.22 ' 7;  Oursbourn, 259 S.W.3d at 176.  Section 7
provides, AWhen the issue is raised by the evidence, the trial judge shall
appropriately instruct the jury, generally, on the law pertaining to such
statement.@  Tex. Code Crim. Proc. Ann. art. 38.22 ' 7.  Under section 7, if the
defendant made his statement as the result of custodial interrogation, he is
entitledCwhen the issue is raised by the
evidenceCto have the jury decide whether he
was adequately warned of his rights and knowingly and intelligently waived
them.  Oursbourn, 259 S.W.3d at 176.  AThe phrase >the issue= refers to compliance with the
statutory warnings set out in . . . [article] 38.22, '' 2 & 3, and the voluntariness of
the defendant=s waiver of the rights.@  Id.  For the issue to be Araised by the evidence,@ there must be a genuine factual
dispute.  Id.

Because
the trial court correctly determined appellant=s statement was not the product of
custodial interrogation, no warnings were required.  See Tex. Code Crim.
Proc. Ann. art. 38.22 ' 3. Therefore, there was no Aissue@ on whether appellant adequately received
such warnings and voluntarily waived them.  See id. ' 7.  Because appellant was not
entitled to submission of a jury instruction under article 38.22, section 7,
appellant=s counsel was not deficient by failing to request the instruction.  We
overrule appellant=s third issue.

The
judgment of the trial court is affirmed.

 

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and Majority and Concurring
Memorandum Opinions filed December 18, 2008.

Panel consists of Justices Frost, Seymore, and Guzman
(Frost, J., concurring).

Do Not Publish C
Tex. R. App. P. 47.2(b).









[1]   Although Lee and Rivera gave otherwise
substantially similar testimony, their accounts differed on whether another
robber, in addition to the masked man, definitely entered the office.  In any
event, the State proved that two men besides appellant committed the robbery,
even if they did not all enter the office. 





[2]  The actions depicted on the surveillance tape, which
was admitted at trial, are not exactly clear. The actions summarized above are
reflected by a combination of the surveillance tape, Wedemeyer=s trial testimony, Officer Roberts=s testimony during the motion-to-suppress hearing and
at trial, and Officer Roberts=s recitations
to appellant during his interview regarding the actions shown on the
surveillance tape.





[3]  In his stated issue, appellant also asserts his
statement was obtained in violation of Code of Criminal Procedure article
38.38.  However, appellant advances no argument to support this assertion. 
Moreover, article 38.38 would not apply to any issue regarding appellant=s motion to suppress his statement.  See Tex.
Code Crim. Pro. Ann. art. 38.38 (Vernon 2005) (providing that evidence a
defendant has contacted or retained an attorney is not admissible on issue of
whether he committed a criminal offense, and judge and State may not comment
that defendant has contacted or retained an attorney). 

 





[4]  Two recordings of appellant=s statement were admitted at the motion-to-suppress
hearing and during trial.  The recordings are identical except that background
noise was eliminated from the second tape.  Even the second tape is somewhat
difficult to understand.  However, we recite the contents based on the
comprehensible portions of the tape and Officer Roberts=s testimony at the motion-to-suppress hearing.





[5]  At the motion-to-suppress hearing, appellant also
complained that the statement was recorded without his knowledge; however, he
offered no theory to demonstrate the statement was inadmissable for this
reason.